IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| YOEL WEISSHAUS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-cv-00035-z |
| § | |
| STEVE COY TEICHELMAN, and § | |
| 100th JUDICIAL DISTRICT, § | |
| § | |
| *Defendants* . § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT 100th JUDICIAL DISTRICT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

**TO THE HONORABLE MATTHEW J. KACSMARYK PRESIDING JUDGE:**

COMES NOW, Plaintiff, YOEL WEISSHAUS hereinafter referred to as ("Mr. Weisshaus" or "Plaintiff"), and files this brief in support of his response to Defendant 100TH Judicial District's ("100th Judicial District" or "Defendant") Motion to Dismiss under Fed. R. Civ. P. Rule 12 (b)(6). In support thereof, Plaintiff respectfully shows the Court as follows:

**I.**
**Introduction**

On March 2, 2022, Plaintiff Yoel Weisshaus initiated this cause of action by filing his Original Complaint alleging that Defendant Officer Steve Coy Teichelman employed with the 100th Judicial District Traffic Enforcement Division conducted a traffic stop on him and alleging that even though the purpose for the stop had conducted, Defendant Teichelmen illegally prolonged the detention by detaining Mr. Weisshaus and searching his vehicle. This was because absent reasonable suspicion, Defendant Teichelman's extension of the traffic stop violated Mr. Weisshaus's Fourth Amendment rights under the United States Constitution to be free from unreasonable search and seizure as well as illegal detention. (ECF 1). Plaintiff further alleged that

1

Defendant Teichelman conducted this unconstitutional detention in violation of Mr. Weisshaus's rights pursuant to the 100th Judicial District's practice of illegally prolonging traffic stops past when the purpose for the stop has concluded in order to illegally detain and search citizens and subject them to civil forfeiture proceedings pursuant to Article 59.01 of the Code of Criminal Procedure. (ECF 1). Plaintiff alleged that upon information and belief, this practice was put into place by Luke Inman, who created the 100th Judicial District Traffic Enforcement Division for the purpose of profiting off of traffic stops. (ECF 1). On March 30, 2022, Defendant 100th Judicial District filed a Motion to Dismiss pursuant to Fed. R. Civ. P. Rule 12(b)(6). (ECF 10). Mr. Weisshaus now files this response.

Plaintiff's § 1983 claim for municipal liability as to Defendant does not fail because Plaintiff has sufficiently pleaded facts in his Original Complaint giving rise to a reasonable inference that the 100th Judicial District had an unconstitutional practice implemented by its policymaker, Luke Inman, of illegally detaining and searching people in violation of their Fourth Amendment rights in order to profit under the civil forfeiture statute.

## II.
## Standard of Review

"[A] motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted." *Tex. Democratic Party v. Dall. Cty.*, Civil Action No. 3:08-CV-2117-P, 2009 U.S. Dist. LEXIS 130172, at *15 (N.D. Tex. 2009) (*citing Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). To defeat a motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal citations omitted).

While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Colo.*, 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. DART*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.; Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). A court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether

the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations in the pleadings to determine whether they are adequate to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). Denial of a 12(b)(6) motion does not affect whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Mann*, 556 F.2d at 293.

### III.
### Arguments and Authorities

Municipalities and other local governments are "persons" within the meaning of Section 1983 and can therefore be held liable for violating a person's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694). A municipality "cannot be liable for an unwritten custom unless '[a]ctual or constructive knowledge of such custom' is attributable to a city policymaker." *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Hicks–Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)). To establish municipal liability under § 1983 based on an alleged "persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown." *Malone v. City of Fort Worth*, 297 F. Supp. 3d 645, 654 (N.D. Tex. 2018) (citing *Hicks– Fields*, 860 F.3d at 808). Constructive knowledge may be attributed to the governing body on the ground

that it would have known of the violations if it had properly exercised its responsibilities…" *Hicks–Fields*, 860 F.3d at 808.

   1. Policy Maker

The identification of policymaking officials is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). Significantly, nowhere in its Motion does Defendant dispute that Plaintiff alleged a policy maker for the 100th Judicial District. (ECF 10).

Plaintiff alleged in his Original Complaint that Luke Inman was the chief policy maker for the 100th Judicial District who created the Traffic Enforcement Division in which Defendant Teichelman worked. (ECF 1, ¶¶ 51-53). Plaintiff alleged factual support for Inman being the official policy maker in that he had full and complete authority to enter into and execute local asset forfeiture agreements with surrounding law enforcement agencies and to make the decision on how funds from these civil forfeitures would be spent. (ECF 1, ¶¶ 54-68). Plaintiff alleged that Inman, as the official policy maker was aware that seizure of assets by the 100th Judicial Traffic Enforcement Division requires a criminal charge but does not require a conviction, and therefore, even if the constitutionality of the seizure was successfully challenged in subsequent criminal proceedings, the 100th Judicial District still had the ability to seize assets as a result of civil forfeiture proceedings even if citizens were unconstitutionally subjected to prolonged detentions after the purposes of traffic stops had concluded. (ECF 1, ¶¶ 70-71). Plaintiff also alleged that as official policymaker, Inman had both actual and constructive knowledge of the practice of prolonging traffic stops past when the purposes for the stop had concluded in order to illegally detain citizens and subject them to civil forfeiture proceedings due to (1) Inman implementing the practice to raise profits for the 100th Judicial District as he was the one who entered into the asset

forfeiture agreements and knew how much money was to be made through civil forfeitures, (2) Inman was the official for the 100th Judicial District responsible for investigating civil forfeiture actions pursued against detainees, and (3) Inman was intimately familiar with the facts of each civil forfeiture action as he was required to submit affidavits in each civil forfeiture case, including each of the prior instances referenced in Plaintiff's Original Complaint, which included the seizing officer's Incident Reports in an attempt to prove each element of the civil forfeiture claims pursued by the 100th Judicial District and Inman was the official for the 100th Judicial District that reviewed, briefed, and argued the suppression issues related to these seizures in criminal cases and the forfeiture issues in civil matters. (ECF 1, ¶¶ 166-170).

Accordingly, Plaintiff has sufficiently pleaded the existence of a policy maker with knowledge of the unconstitutional practices alleged in his Original Complaint.

   2.   <u>Policy, Custom, and Practice Which was Moving Force of Constitutional Violations</u>

Defendant incorrectly argues in its Motion that Plaintiff is challenging the lawfulness of the asset forfeiture agreements and then explains the lawfulness of civil forfeiture. (ECF 10, pp. 5-6). However, Plaintiff does not challenge the constitutionality of the Texas civil forfeiture statutes or the asset forfeiture agreements, but instead, Plaintiff simply asserts that lawful civil forfeiture statutes are the means by which Defendant profits upon engaging in a pattern and practice of illegally prolonging detentions to perform illegal searches and seize property, currency, and contraband. (ECF 1, ¶¶ 37-43, 69-95, 172-176). The asset forfeiture agreements are evidence of Inman's authority, knowledge, and motivation to pursue the unconstitutional practice of illegal detentions, searches, and seizures. (ECF 1, ¶¶ 53-71, 172-176).

Defendant also argues that the 21 instances showing a pattern and practice of the 100th Judicial District Traffic Enforcement Division's practice of illegally prolonging detentions and

performing illegal searches in an effort to profit off of the civil forfeiture statutes are insufficient due to claiming (1) "Plaintiff offers no explanation as to how any of these stops were 'prolonged' pursuant to an 'unconstitutional pattern and practice,'" (2) that "in a conclusory manner [Plaintiff] alleges that each of those stops were unconstitutional in some manner," and (3) arguing that "the instances cited by Plaintiff are factually different form the facts before the Court." (ECF 10, p. 6). However, the 21 instances cited by Plaintiff in his Original Complaint are factually similar to this case, their unconstitutionality is clear, as is how they would support the unconstitutional practice complained of in this case.

The facts alleged by Plaintiff in the Original Complaint are that Plaintiff was pulled over by Defendant Teichelman for traffic infractions for allegedly speeding and displaying an obscured license plate/registration insignia. (ECF 1, ¶¶ 7-9). Defendant Teichelman gave Plaintiff a warning and the reason for the stop ended. (ECF 1, ¶¶ 11-16). However, Defendant Teichelman then asked for consent to search Plaintiff's vehicle, which Plaintiff declined to give him. (ECF 1, ¶¶ 17-18). Defendant Teichelman then prolonged the detention, which had already ended, to walk his K9 around Plaintiff's vehicle to perform an open-air sniff of the vehicle. (ECF 1, ¶¶ 19-23). The K9 did not alert to drugs or contraband in the vehicle, because there were none inside of the vehicle. (ECF 1, ¶¶ 24-25). Despite Defendant Teichelman not having probable cause to search the vehicle, he performed a search of the vehicle forcing Plaintiff's illegal detention to be further prolonged. (ECF 1, ¶¶ 7-9). (ECF 1, ¶¶ 26-27). Nothing illegal was found and Plaintiff was finally allowed to leave after denying consent to search his person and requesting to leave three separate times. (ECF 1, ¶¶ 29-34).

In 16 of the 21 cases cited by Plaintiff, just as in this case, after consent was denied the seizing officer with the 100th Judicial District called a K-9 unit to prolong detentions after the

purposes of the traffic stops had concluded pursuant to the 100th Judicial District's unconstitutional pattern and practice. (ECF 1, ¶¶ 72-88). In each of those 16 cases, just as in this case, law enforcement officers with the 100th Judicial District pull drivers over for traffic infractions which would not be supported by evidence found in the vehicles, such as following too closely, failing to signal a lane change, or speeding. (ECF 1, ¶¶ 72-88). In each of those 16 cases, just as in this case, consent to search the vehicle was requested by the officer but denied by the driver. (ECF 1, ¶¶ 72-88). In each of those 16 cases, just as in this case, despite the purpose for the traffic stop concluding, a K9 unit was called to the scene and allegedly made an alert on the vehicle. (ECF 1, ¶¶ 72-88).

In the other 5 cases cited by Plaintiff, just as in this case, the seizing officer conducted a search not supported by a warrant, reasonable suspicion, probable cause, nor consent. (ECF 1, ¶¶ 89-95). In each of these other 5 cases cited by Plaintiff, just as in this case, law enforcement officers with the 100th Judicial District pull drivers over for traffic infractions which would not be supported by evidence found in the vehicles, such as following too closely, improper lane change, or speeding. (ECF 1, ¶¶ 89-95). In each of these other 5 cases cited by Plaintiff, just as in this case, law enforcement officers with the 100th Judicial District searched the vehicle without probable cause or consent. (ECF 1, ¶¶ 89-95).

Thus, the factual similarities between the 21 cases cited by Plaintiff in his Original Complaint and the facts of this case as alleged by Plaintiff in his Original Complaint are not so different as to be insufficient to form the basis of a pattern and practice at the 12(b)(6) stage of this case. Defendant's complaint that the constitutional violations alleged in these 21 other cases are conclusory is perplexing, as it is the same constitutional violation complained of in this case: the unconstitutional prolonging of a detention after the reason for the detention has ceased and the

unconstitutional search of a vehicle absent consent or probable cause occurring during that unconstitutionally prolonged detention. It is Plaintiff's contention at in his pleadings that the 21 other instances of unconstitutionally prolonged detentions and unconstitutional searches were directly caused by the 100th Judicial District's practice and custom of performing these unconstitutional actions in an effort to raise profits under the civil forfeiture statutes. (ECF 1, ¶¶ 95-96). As a result, Plaintiff has sufficiently pleaded an official practice shown through the pattern of similar incidents outlined in the Original Complaint.

  3. <u>Violation of Constitutional Rights Whose 'Moving Force' is the Policy or Custom.</u>

Plaintiff alleged two constitutional violations whose moving force was the unconstitutional practice and custom of the 100th Judicial District: illegal detention and illegal search, both violations of the Fourth Amendment to the United States Constitution. (ECF 1, ¶¶ 99-142, 144-158, 171-179). Defendant Teichelman was not only an officer for the 100th Judicial District Traffic Enforcement Division following the customs and practices of the 100th Judicial District but was also an officer who performed illegally prolonged detentions and searches in eleven of the 21 cases cited by Plaintiff. (ECF 1, ¶¶ 78-83, 85, 87-88, 92, 94).

When viewed in the light most favorable to the Plaintiff, he has sufficiently pleaded facts give rise to the reasonable inference of a policy, custom or practice which was the moving force of his constitutional violations and was known and enforced by the official policy maker for the 100th Judicial District, Luke Inman. As a result, Defendant's Motion is without merit and should be denied.

## IV.
## Prayer

WHEFORE, PREMISES CONSIDERED, Plaintiff prays that this Court will deny the Defendant's Motion to Dismiss. Plaintiff further prays for any other relief for which he may be justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721
SCOTT H. PALMER,
Texas Bar No. 00797196

SCOTT H. PALMER, P.C.
15455 Dallas Parkway Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@scottpalmerlaw.com
scott@scottpalmerlaw.com

## CERTIFICATE OF SERVICE

I certify that on April 19, 2022, this document was filed and served through the ECF system on all counsel of record.

/s/ *James P. Roberts*
James P. Roberts

COUNSEL FOR PLAINTIFF