IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | |
|---|---|
| YOEL WEISSHAUS, | § |
| Plaintiff, | § |
| v. | §    2:22-CV-035-Z-BR |
| STEVE COY TEICHELMAN, *et al.*, | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant 100th Judicial District's Motion to Dismiss and Brief in Support ("Motion") (ECF No. 10), filed on March 30, 2022. Having reviewed the Motion, related pleadings, and applicable law, the Court finds the Motion should be and is hereby **GRANTED**.

### BACKGROUND

Plaintiff Yoel Weisshaus ("Plaintiff") alleges the following facts. On March 2, 2020, Defendant Steven Coy Teichelman — in his individual capacity as an officer employed by the 100th Judicial District Attorney's Office, Traffic Enforcement Division — conducted a traffic stop on Plaintiff. ECF No. 1 at 3–4. Defendant Teichelman pulled Plaintiff over for "speeding and displaying an obscured license plate/registration insignia." *Id.* at 3. Defendant Teichelman asked Plaintiff to sit in the passenger-side front seat of Defendant Teichelman's patrol vehicle. *Id.* at 5. Plaintiff asserts, "after running [Plaintiff's] information, Defendant Teichelman returned [Plaintiff's] driver license, issued him a citation, and informed him that he was free to leave." *Id.* at 3. Then, although "the purpose for the stop had concluded, Defendant Teichelman illegally prolonged the detention." *Id.*

Defendant Teichelman searched Plaintiff's vehicle with a K-9 used to detect contraband. *Id.* at 7. Defendant Teichelman "stated the dog alerted to drugs inside [Plaintiff's] vehicle." *Id.* at 8. Defendant Teichelman then searched Plaintiff's vehicle. *Id.* During the search, "Defendant Teichelman ripped out the lining of the seats . . . and tossed out the luggage" stored inside the vehicle. *Id.* Defendant Teichelman found no contraband. *Id.*

Because Defendant Teichelman did not locate contraband inside Plaintiff's vehicle, "Defendant Teichelman insisted on patting [Plaintiff] down." *Id.* Plaintiff declined Defendant Teichelman's invitation to be patted down and, instead, asked to leave. *Id.* Defendant Teichelman responded by telling Plaintiff "he was detained for refusing to comply with orders." *Id.* Defendant Teichelman — however — granted Plaintiff permission to leave when he again asked for a third time. *Id.*

On March 2, 2022, Plaintiff sued Defendants Teichelman and the 100th Judicial District of Texas under 42 U.S.C. § 1983. *See generally id.* Plaintiff avers Defendants caused Plaintiff to be illegally detained and searched in violation of his Fourth Amendment rights. *Id.* at 26–38. Plaintiff alleges Defendant Teichelman's search was an "unconstitutional detention in violation of Mr. Weisshaus's rights pursuant to the 100th Judicial District's practice of prolonging traffic stops past when the purpose for the stop had concluded in order to illegally detain and search citizens and subject them to civil forfeiture proceedings." *Id.* at 3. Plaintiff claims "this practice was put into place by [District Attorney] Luke Inman, who created the 100th Judicial District Traffic Enforcement Division for the purpose of profiting off of traffic stops." *Id.* Plaintiff asserts both actual and punitive damages for these alleged violations. *Id.* at 38–39.

On March 30, 2022, Defendant 100th Judicial District filed a Motion to Dismiss based on Federal Rule of Civil Procedure 12(b)(6). ECF No. 10.

**LEGAL STANDARD**

A court may dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal marks omitted). "The court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Id.* (quoting *Martin K. Eby Constr. Co., Inc. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

A court should first "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Id.* When "well-pleaded factual allegations" exist, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This standard of "plausibility" is not necessarily a "probability requirement," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that

3

are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

ANALYSIS

Section 1983 applies to "municipalities and other local government units." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* (internal marks omitted). Municipal or local government liability under Section 1983 requires: (1) "a policymaker"; (2) "an official policy"; and (3) "a violation of a constitutional right whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). These three "attribution principles" differentiate "individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself." *Id.*

Because Defendant 100th Judicial District does not dispute whether District Attorney Inman qualifies as "a policymaker," the Court begins by analyzing the second "attribution principle" — the existence of "an official policy." *See id.* at 579 ("Since the City chose not to pursue this angle of defense, no more need be said of it."). Official policies can take on various forms. *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but also may arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that

fairly represents municipal policy.'" *Id.* (quoting *Piotrowski*, 237 F.3d at 579). Whatever its form, to hold a municipality or local government liable under Section 1983, a plaintiff must show there is a "direct causal link between the [relevant] policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. When there is no written policy, a plaintiff has the "heavy burden" to show a "pervasive pattern" of constitutional violations that can be said to represent official policy. *Sanchez v. Young County*, 956 F.3d 785, 793 (5th Cir. 2020). "A pattern requires similarity, specificity, and sufficiently numerous prior incidents," based on the context of the incident and the police force at issue. *Davidson v. City of Stafford*, 848 F.3d 384, 396–97 (5th Cir. 2017).

A facially innocuous policy "will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)). "Deliberate indifference" is a stringent test — "a showing of simple or even heightened negligence will not suffice" to prove culpability. *Id.* Establishing deliberate indifference generally requires a "pattern of similar violations" arising from a policy "so clearly inadequate as to be 'obviously likely to result in a constitutional violation.'" *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001)).

Plaintiff alleges it is Defendant 100th Judicial District's "practice and custom" to have the "Traffic Enforcement Division illegally prolong detentions for the purpose of searching vehicles to seize assets to pay for unique items that benefit law enforcement." ECF No. 1 at 17 (internal marks omitted); *see also* ECF No. 16 at 6 (stating "lawful civil forfeiture statutes are the means by which Defendant [100th Judicial District] profits upon engaging in a pattern and practice of illegally prolonging detentions to perform illegal searches and seize property, currency, and

contraband").[4] Plaintiff alleges "[t]he asset forfeiture agreements are evidence of Inman's authority, knowledge, and motivation to pursue the unconstitutional practice of illegal detentions, searches, and seizures." *Id.* To demonstrate an "unconstitutional pattern and practice" of Defendant's implementation of the civil forfeiture statutes, Plaintiff sets forth 21 examples in which a seizing officer called a K-9 unit to prolong detentions after consent of the detainee was denied and the purposes of the traffic stops had concluded. *See* ECF No. 1 at 17–26.

Defendant 100th Judicial District argues Plaintiff makes conclusory statements to support his assertion that the 100th Judicial District has a practice of profiting off civil forfeiture actions instituted against citizens under the Texas Code of Criminal Procedure. ECF No. 10 at 5. Defendant 100th Judicial District also asserts the 21 examples of unconstitutional searches and detentions Plaintiff details are factually dissimilar to Plaintiff's alleged stop and search. *Id.* at 6. Additionally, Plaintiff fails to describe the "context, documentation, or ultimate resolution" of those stops and searches. *Id.* at 6. Defendant 100th Judicial District explains "Plaintiff offers no explanation as to how any of these stops were 'prolonged' pursuant to an 'unconstitutional pattern and practice.' Plaintiff only notes that traffic stops took place and contraband was discovered and in a conclusory manner alleges that each of those stops were unconstitutional in some manner." *Id.*

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Balle v. Nueces County*, 690 F. App'x 847, 852 (5th Cir. 2017) (same); *Mohamed v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 875 (N.D. Tex. 2018) (same). Stated otherwise, "the pleadings are adequate with respect to a [S]ection 1983 claim against a governmental entity when they set forth 'specific factual allegations that

---

[4] Local agreements with law enforcement relating to the handling of civil forfeitures are contemplated by the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 59.06(c).

allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force' for the constitutional violation asserted." *Mohamed*, 300 F. Supp. at 875 (quoting *Balle*, 690 F. App'x at 852).

The Court finds Plaintiff fails to plausibly plead the existence of an official policy. Plaintiff provides 21 examples of stops and seizures undertaken by Defendant 100th Judicial District. *See* ECF No. 1 at 17–25. But the examples Plaintiff provides lack specific facts upon which the Court can plausibly infer Defendant 100th Judicial District engaged in a "pervasive pattern" of Fourth Amendment violations, thereby constituting an official policy.

In *Peterson v. City of Fort Worth*, the Fifth Circuit determined evidence of 27 excessive-force complaints against Fort Worth Police Department officers over three years — absent evidence placing the number of complaints in context — did not establish a pattern of excessive force. 588 F.3d 838, 850–52 (5th Cir. 2009). Like *Peterson*, the Court finds the sparse facts alleged by Plaintiff fail to plausibly show Defendant 100th Judicial District implemented an official policy. Plaintiff does not include information as to the size of Defendant's law enforcement division or how many arrests in total occurred during the eight-year period in which the alleged 21 alleged violations occurred. *See id.* at 851–52; *see also generally* ECF No. 1. Even more, Plaintiff does not include specific facts as to the ultimate resolution of any of the cited examples. *See generally* ECF No. 1. For instance, Plaintiff does not disclose whether the alleged victims of Fourth Amendment violations ultimately pled guilty or how a court ruled as to any claim of unconstitutional behavior. *See id.* at 17–26.

Plaintiff simply concludes each of the 21 examples are pursuant to Defendant's "unconstitutional pattern and practice." *See id.* The Court thus finds Plaintiff fails to plausibly plead Defendant 100th Judicial District "instituted the practice and custom of having [the] Traffic

Enforcement Division illegally prolong detentions for the purpose of searching vehicles to seize assets to pay for unique items that benefit law enforcement." *Id.* at 17 (internal marks omitted). And because Plaintiff has not adequately pled an "official policy," he has not plausibly pled an "official policy" was the "moving force" behind the constitutional violations he alleges. *See, e.g., Bryan v. City of Dallas*, 188 F. Supp. 3d 611, 619 (N.D. Tex. 2016).

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss.

**SO ORDERED**.

May 25, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE