**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | |
|---|---|
| YOEL WEISSHAUS, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-cv-00035-Z |
| § | |
| STEVE COY TEICHELMAN, AND § | |
| 100TH JUDICIAL DISTRICT, § | |
| § | |
| DEFENDANTS. § | |

Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
P.O. Box 9158
Amarillo, Texas  79105
Tel:  (806) 376-5613
Fax:  (806) 379-0316

Brad R. Timms
State Bar No. 24088535
brad.timms@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
1008 Macon Street, Suite 101
Fort Worth, Texas  76102
Tel:  (817) 885-7529
Fax:  (817) 439-9922

ATTORNEYS FOR DEFENDANT STEVE COY TEICHELMAN

**TABLE OF CONTENTS**

I. Introduction ................................................................................................. 1

II. Summary Judgment Standard for Qualified Immunity .................................. 2

III. Background ................................................................................................. 3

    A. Plaintiff's Allegations of Illegal Detention and Search ............................... 3

    B. Officer Teichelman's Affidavit..................................................................... 4

IV. Argument and Authorities............................................................................ 7

    A. Qualified Immunity.................................................................................. 7

        *a. Violation of Clearly Established Law*............................................. 8

        *b. Vehicle Searches During a Traffic Stop* ........................................ 8

    B. Officer Teichelman is entitled to qualified immunity............................... 9

        a. *Officer Teichelman had probable cause to conduct the initial traffic stop* ..................................................................... 10

        b. *Officer Teichelman developed reasonable suspicion of criminal activity while questioning Plaintiff*............................... 11

Prayer.................................................................................................................. 14

## TABLE OF AUTHORITIES

Cases                                                                                                            Page(s)

*Anderson v. Valdez*,
  913 F.3d 472 (5th Cir. 2019)..................................................................................................8

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ............................................................................................................10

*Brosseau v. Haugen,*
  543 U.S. 194 (2004) ..............................................................................................................2

*Brown v. Callahan*,
  623 F.3d 249 (5th Cir. 2010)..............................................................................................2, 3

*Cozzo v. Tangipahoa Parish Council—President Gov't*,
  279 F.3d 273 (5th Cir. 2002)..................................................................................................7

*El Bey v. Dominguez*,
  540 F. Supp. 3d 653 (N.D. Tex. 2020) ...............................................................................8, 9

*Florida v. Harris*,
  568 U.S. 237 (2013) ..............................................................................................................6

*Gates v. Tex. Dep't of Protective & Regulatory Servs.*,
  537 F.3d 404 (5th Cir. 2008)..................................................................................................2

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ..............................................................................................................7

*Hathaway v. Bazany*,
  507 F.3d 312 (5th Cir. 2007)..................................................................................................2

*Heien v. North Carolina*,
  574 U.S. 54 (2014) .............................................................................................................8, 9

*Hunter v. James*,
  No. 3:14-cv-1817-B-BN, 2017 WL 3972004 (N.D. Tex. 2017).............................................10

*Illinois v. Caballes*,
  543 U.S. 405 (2005) ..............................................................................................................9

*Illinois v. Wardlow*,
  528 U.S. 119 (2000) ............................................................................................................13

*Kansas v. Glover*,
    ––– U.S. –––, 140 S. Ct. 1183 (2020)..................................................................................9

*Little v. Liquid Air Corp.*,
    37 F.3d 1069 (5th Cir. 1994).............................................................................................3

*Malley v. Briggs*,
    475 U.S. 335 (1986) .........................................................................................................7

*McClendon v. City of Columbia*,
    305 F.3d 314 (5th Cir. 2002).........................................................................................2, 3

*McLin v. Ard*,
    866 F.3d 682 (5th Cir. 2017).............................................................................................8

*Michalik v. Hermann*,
    422 F.3d 252 (5th Cir. 2005).............................................................................................2

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019).............................................................................................8

*Mullenix v. Luna*,
    577 U.S. 7 (2015) .............................................................................................................8

*Navarette v. California*,
    572 U.S. 393 (2014) .........................................................................................................8

*Orr v. Copeland,*
    844 F.3d 484 (5th Cir. 2016).......................................................................................9, 10

*Rich v. Palko*,
    920 F.3d 288 (5th Cir. 2019).............................................................................................8

*Roy v. City of Monroe*,
    950 F.3d 245 (5th Cir. 2020).......................................................................................9, 10

*Salas v. Carpenter,*
    980 F.2d 299 (5th Cir. 1992).........................................................................................2, 7

*Terry v. Ohio*,
    392 U.S. 1 (1968) ...........................................................................................................11

*U.S. v. Brigham*,
    382 F.3d 500 (5th Cir. 2004)...........................................................................................14

*U.S. v. Pack*,
   612 F.3d 341 (5th Cir.) .................................................................................................. 9, 11, 13

*United States v. Andres*,
   703 F.3d 828 (5th Cir. 2013) ...................................................................................................11

*United States v. Escalante*,
   239 F.3d 678 (5th Cir. 2001) ...................................................................................................10

*United States v. Estrada*,
   459 F.3d 627 (5th Cir. 2006) ...................................................................................................11

*United States v. Johnson*,
   2006 WL 1041148 (N.D. Tex. Apr. 20, 2006) .........................................................................11

*United States v. Lopez*,
   No. 2:21-CR-51-Z-(2), 2021 WL 5746006 (N.D. Tex. Dec. 2, 2021) ........................... 9, 11, 12

*United States v. Lopez-Moreno*,
   420 F.3d 420 (5th Cir. 2005) ...................................................................................................11

*United States v. Masterson*,
   450 Fed. Appx. 348 (5th Cir. 2011) ..........................................................................................6

*United States v. Place*,
   462 U.S. 696 (1983) ...................................................................................................................9

*United States v. Sanchez-Pena*,
   336 F.3d 431 (5th Cir. 2003) .....................................................................................................6

*Wallace v. Cnty. of Comal*,
   400 F.3d 284 (5th Cir. 2005) .....................................................................................................7

*Whatley v. Philo*,
   817 F.2d 19 (5th Cir. 1987) .......................................................................................................2

*Whren v. United States*,
   517 U.S. 806 (1996) ..............................................................................................................9, 10

Statutes

42 U.S.C. § 1983 ...............................................................................................................................1

Rules

Federal Rule of Civil Procedure 56 ..................................................................................................1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| YOEL WEISSHAUS, § § | |
| PLAINTIFF, § § | |
| v. § | CIVIL ACTION NO. 2:22-cv-00035-Z |
| § § | |
| STEVE COY TEICHELMAN, AND § 100TH JUDICIAL DISTRICT, § § | |
| DEFENDANTS. § | |

**DEFENDANT STEVE COY TEICHELMAN'S
BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendant Steve Coy Teichelman ("Officer Teichelman" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56, and files this Brief in Support of Motion for Summary Judgment on Defendant's qualified immunity defense:

**I.
Introduction**

This case arises out of a traffic stop that occurred on or about March 2, 2020 when Plaintiff Yoel Weisshaus and passenger Sasha Lee were driving from Oklahoma to Arizona.[1] Plaintiff asserts claims against Officer Teichelman pursuant to the Fourth Amendment and 42 U.S.C. § 1983 for illegal detention and search.[2] Officer Teichelman is entitled to qualified immunity. Consequently, Plaintiff's claims against Officer Teichelman should be dismissed.

---

[1] Plaintiff's Original Compliant [Doc. 1], ¶7.
[2] [Doc. 1], ¶¶ 99-142, 144-158.

1

Plaintiff wholly fails in his burden to defeat a public servant's assertion of qualified immunity. Plaintiff must demonstrate that Officer Teichelman obviously violated clearly established federal rights such that no reasonable officer could have thought such conduct constitutional. *Salas v. Carpenter,* 980 F.2d 299, 306 (5th Cir. 1992); *Whatley v. Philo,* 817 F.2d 19, 20 (5th Cir. 1987). Even if there is a question as to whether Plaintiff has stated a claim of a constitutional violation, Plaintiff's claims against Officer Teichelman must be dismissed. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004). Consequently, Officer Teichelman 's immunity remains intact, and Plaintiff's claims against him should be dismissed.

## II.
## Summary Judgment Standard for Qualified Immunity

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)). Specifically, when qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted). Instead, "[i]t is sufficient that the movant in good faith pleads that [he] is entitled to qualified immunity. Once [he] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks and emphasis omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (stating that "[o]nce qualified immunity is asserted, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense"); *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008) (noting that when a government official pleads qualified immunity, the plaintiff must "rebut the defense by establishing that the

2

official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct").

Once the burden of proof shifts to the plaintiff, the plaintiff must negate qualified immunity. *Brown*, 623 F.3d at 253. This burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotation marks and citations omitted). Instead, on summary judgment, "the plaintiff can no longer rest on the pleadings . . . [,] and the court looks to the evidence before it . . . ." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (internal quotation marks omitted).

### III.
### Background

**A. Plaintiff's Allegations of Illegal Detention and Search**

Plaintiff alleges that he was pulled over for speeding and displaying an obscured license plate.[3] Officer Teichelman requested to see Plaintiff's driver's license and registration.[4] Plaintiff further alleges that Officer Teichelman requested that Plaintiff step out of his vehicle and follow him to his patrol vehicle while Officer Teichelman "processed a warning."[5] Officer Teichelman instructed Plaintiff to sit in the front seat of his patrol vehicle while he printed out a warning.[6]

Plaintiff alleges in conclusory fashion that the purpose of the traffic stop ceased at the moment Officer Teichelman handed Plaintiff the warning.[7] Officer Teichelman requested consent

---

[3] [Doc. 1], ¶9.
[4] [Doc. 1], ¶10.
[5] [Doc. 1], ¶11.
[6] [Doc. 1], ¶12.
[7] [Doc. 1], ¶¶14-16.

to a search of Plaintiff's vehicle.[8] Plaintiff declined.[9] Plaintiff alleges that Officer Teichelman directed Plaintiff not to leave while he walked his canine around the vehicle.[10] Officer Teichelman noted to Plaintiff that the canine alerted to the odor of narcotics.[11] Officer Teichelman then searched the vehicle.[12] Officer Teichelman found no narcotics and ultimately let Plaintiff leave.[13] The entire encounter lasted about twenty minutes.[14]

### B. Officer Teichelman's Affidavit

Officer Teichelman was certified in 2011 to handle canine officers.[15] He has advanced training in highway interdiction and identifying deceptive behavior.[16] He attends yearly continuing education courses through Highway Interdiction Training Specialists, Inc.[17] Those courses include training on Advanced Roadside Interview Techniques for Patrol Officers, Advanced Vehicle Contraband Concealment, and Criminal Patrol/Drug Interdiction.[18]

Officer Teichelman routinely patrols I-40 with his canine partner, Kobra.[19] He is certified to handle Kobra, and Kobra is registered and trained to alert with a passive response.[20] Kobra is trained to sit or lay down and wait once she finds a scent.[21]

On March 2, 2020, Officer Teichelman observed Yoel Weisshaus speeding and displaying an obscured license plate/registration insignia as he drove on I-40.[22] Officer Teichelman pulled

---

[8] [Doc. 1], ¶12.
[9] [Doc. 1], ¶13.
[10] [Doc. 1], ¶¶20-21.
[11] [Doc. 1], ¶26.
[12] [Doc. 1], ¶27.
[13] [Doc. 1], ¶34.
[14] [Doc. 1], ¶35.
[15] Teichelman Affidavit; Appx. 001 at ¶3.
[16] Appx. 001 at ¶3.
[17] Appx. 001 at ¶3.
[18] Appx. 001 at ¶3.
[19] Appx. 002 at ¶4.
[20] Appx. 002 at ¶4.
[21] Appx. 002 at ¶4.
[22] Appx. 002 at ¶5.

4

Mr. Weisshaus over.[23] Mr. Weisshaus appeared to be a middle-aged male.[24] Mr. Weishauss was traveling with an African-American female that appeared to be in her early 20s.[25] Officer Teichelman made contact with the driver, Mr. Weisshaus, and Officer Teichelman asked the driver to walk with him to the patrol vehicle as he ran his license and registration information.[26] The female passenger remained in the vehicle.[27]

While in the patrol vehicle, as Officer Teichelman ran the license and registration information, Officer Teichelman asked Mr. Weishauss questions regarding where he was traveling, how long he intended to stay at his destination, and his lodging plans.[28] Mr. Weishauss' driver's license indicated he lived in New Jersey.[29] Mr. Weishauss was short with his responses and was unable to provide any details as to a general itinerary, hotel accommodations, or length of stay at his destination.[30] Given that Mr. Weishauss was traveling with a driver's license from New Jersey on I-40—a known drug and human trafficking corridor—with a female that appeared to be considerably younger than him with no familial connection, Officer Teichelman developed a reasonable suspicion of criminal activity.[31] Officer Teichelman's reasonable suspicion developed when Mr. Weishauss was in his patrol vehicle as Officer Teichelman was questioning him and running his driver's license and registration information.[32]

After Mr. Weishauss was unable to provide the duration of his travel plans, provide a general itinerary, or general hotel/lodging information, Officer Teichelman believed it necessary

---

[23] Appx. 002 at ¶5.
[24] Appx. 002 at ¶5.
[25] Appx. 002 at ¶5.
[26] Appx. 002 at ¶5.
[27] Appx. 002 at ¶5.
[28] Appx. 002 at ¶6.
[29] Appx. 002 at ¶6.
[30] Appx. 002 at ¶6.
[31] Appx. 002 at ¶6.
[32] Appx. 002 at ¶6.

to question the female passenger.[33] Officer Teichelman asked the female passenger the same general questions that he asked Mr. Weishauss.[34] The female passenger also could not provide details as to the duration of the trip or general hotel/lodging information.[35] The female passenger appeared nervous, timid, and scared.[36] She looked at the floorboard and failed to make any eye contact with Officer Teichelman.[37]

After questioning the female passenger, Officer Teichelman's reasonable suspicion of criminal activity elevated, and he determined an exterior sniff search by his canine partner, Kobra was necessary to dispel his reasonable suspicion of criminal activity.[38] Officer Teichelman asked the passenger and Mr. Weishauss to stand at a safe distance from the vehicle as he walked Kobra around the vehicle.[39] Kobra gave Officer Teichelman a passive alert to the scent of narcotics.[40] Based on Kobra's alert, he searched the vehicle.[41] However, after the brief search, Officer Teichelman was unable to find any narcotics.[42] Officer Teichelman then let Mr. Weishauss and his passenger leave with a warning to Mr. Weishauss related to his speeding and obscured license plate/registration insignia.[43] Unfortunately, there is no video footage of the stop because the

---

[33] Appx. 002 at ¶7.
[34] Appx. 002 at ¶7.
[35] Appx. 002 at ¶7.
[36] Appx. 002 at ¶7.
[37] Appx. 002 at ¶7.
[38] Appx. 003 at ¶8.
[39] Appx. 003 at ¶8.
[40] Canine alerting behavior is particular to the dog. Because each dog alerts in a different way, the dog's behavior must be interpreted by the handler. *United States v. Masterson*, 450 Fed. Appx. 348, 349 (5th Cir. 2011). A narcotics-detection dog's alert provides probable cause when "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime. *Florida v. Harris*, 568 U.S. 237, 248 (2013). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* at 247. The Fifth Circuit has repeatedly affirmed that alerts by a narcotics-detection dog are sufficient to provide probable cause for a search. *United States v. Sanchez-Pena*, 336 F.3d 431, 444 (5th Cir. 2003).
[41] Appx. 003 at ¶8.
[42] Appx. 003 at ¶8.
[43] Appx. 003 at ¶8.

dashboard camera footage automatically deleted 90 days after the stop occurred pursuant to the applicable retention policy.[44]

# IV.
# Argument and Authorities

### A. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity applies to state officials sued for constitutional violations under § 1983. *See id.* at 818 n.30. "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.' " *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "The objective reasonableness of allegedly illegal conduct is assessed in light of the legal rules clearly established at the time it was taken." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo*, 279 F.3d at 284.

---

[44] Appx. 003 at ¶9.

### a. *Violation of Clearly Established Law*

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations omitted). Clearly established law must be particularized to the facts of a case. *Id.* at 12. Thus, while a case need not be directly on point, precedent must still put the underlying question beyond debate. *Id.* District courts in this Circuit have been told that "clearly established law comes from holdings, not dicta." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (citations omitted). Courts "are to pay close attention to the specific context of the case" and not "define clearly established law at a high level of generality." *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019) (quotations and citations omitted). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotations and citation omitted). To meet this high burden, the plaintiff must "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (quotations and citation omitted).

### b. *Vehicle Searches During a Traffic Stop*

A police officer who reasonably suspects a traffic violation may execute a traffic stop even if further investigation demonstrates the violation did not occur. *El Bey v. Dominguez*, 540 F. Supp. 3d 653, 661 (N.D. Tex. 2020) (Kacsmaryk, J.) (citing *Heien v. North Carolina*, 574 U.S. 54, 57 (2014); *Navarette v. California*, 572 U.S. 393 (2014)). Beyond investigating the suspected violation and writing any justified citation, the stopping officer may ask any stopee incidental questions provided those questions do not measurably extend the stop's duration. *Id.* Such inquiries typically involve (1) asking for the driver's license, registration, and proof of insurance; (2)

checking whether outstanding warrants for the driver exist; and (3) asking the driver if he has drugs or weapons in the car and about his travel plans. *Id.* at 661 n.19.

"If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the vehicle's] occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *U.S. v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). Reasonable suspicion is not the same as clairvoyant certainty; the reasonable suspicion inquiry "falls considerably short of 51% accuracy." *Kansas v. Glover*, ––– U.S. –––, 140 S. Ct. 1183, 1188 (2020) (internal marks omitted). "To be reasonable is not to be perfect." *Heien*, 574 U.S. at 60.

Once the car has stopped, police may search it for contraband whether or not the stop was pretextual. *See Whren v. United States*, 517 U.S. 806, 817 (1996). Free-air sniffs by narcotics-detection dogs are so minimally invasive that they do not constitute a "search" or a "seizure" for Fourth Amendment purposes. *United States v. Lopez*, No. 2:21-CR-51-Z-(2), 2021 WL 5746006, at *2 (N.D. Tex. Dec. 2, 2021) (Kacsmaryk, J.) (citing *United States v. Place*, 462 U.S. 696, 707 (1983)). "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Id.* (citing *Illinois v. Caballes*, 543 U.S. 405, 409 (2005)).

### B. Officer Teichelman is entitled to qualified immunity.

Plaintiff's burden is a formidable one. *See Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). Plaintiff must show both that Officer Teichelman violated the Plaintiff's rights and that those rights were "clearly established" at the time of the violation. *Id.* (quoting *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016)). For a right to be clearly established, it must be "beyond debate"

9

that the defendant's conduct was unlawful. *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The Court need not accept a non-movant's factual allegations that are merely conclusory or speculative. *See Orr*, 844 F.3d at 490 ("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation" are all insufficient to overcome immunity."). The Court need not accept a non-movant's factual allegations that are based merely on his personal beliefs. *Hunter v. James*, No. 3:14-cv-1817-B-BN, 2017 WL 3972004, at *6 (N.D. Tex. 2017).

### a. *Officer Teichelman had probable cause to conduct the initial traffic stop.*

Where an officer has probable cause to believe that a traffic violation has occurred, he may reasonably stop the vehicle. *Whren*, 517 U.S. at 810. For a detention to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *Id.* Even a pretextual traffic stop does not violate the Fourth Amendment, so long as the officer making the stop has probable cause to believe a traffic violation has occurred. *United States v. Escalante*, 239 F.3d 678, 680-81 (5th Cir. 2001).

According to both Plaintiff and Officer Teichelman, Plaintiff was stopped for speeding and displaying an obscured license plate/registration.[45] Plaintiff does not appear to challenge the lawfulness of the initial stop.[46]

---

[45] See [Doc. 1] at ¶¶8-9; Appx. 002 at ¶5.
[46] See [Doc. 1] at ¶¶8-9.

### b. *Officer Teichelman developed reasonable suspicion of criminal activity while questioning Plaintiff.*

In accordance with *Terry v. Ohio* and its progeny, the Court must determine whether Officer Teichelman's action in detaining Plaintiff was (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)). "An officer's subsequent actions are not reasonably related in scope to the circumstances that caused him to stop the vehicle if he detains its occupants beyond the time needed to investigate the circumstances that caused the stop, unless he develops reasonable suspicion of additional criminal activity in the meantime." *Pack*, 612 F.3d at 350. If, however, "the officer develops reasonable suspicion of additional criminal activity . . . he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *Lopez*, 2021 WL 5746006, at *4 (quoting *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013)).

"The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id.* at *3 (citing *United States v. Johnson*, 2006 WL 1041148, at *3 (N.D. Tex. Apr. 20, 2006) (Fitzwater, J.)). "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure." *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006). "The determination . . . must be made based on the totality of the circumstances and the collective knowledge and experience of the officers." *Id.* at 631-32 (citation omitted).

In motion-to-suppress case with similar facts, this Court held that detaining a driver and passenger—and conducting a canine sniff and vehicle search—after the traffic stop concluded was lawful where:

- The driver hesitated when asked about travel plans, and the driver could not provide specifics regarding travel plans;

- The passenger exhibited signs of nervousness despite being told only a warning was being issued; and

- The vehicle was stopped on I-40, a known corridor for narcotics trafficking.

*Lopez*, 2021 WL 5746006, at *4. In *Lopez*, this Court held that the officer, or any other reasonable law enforcement officer, could have reasonably suspected the driver and the other occupant of the vehicle were involved in trafficking narcotics sufficient to support a canine sniff based on the totality of the facts and circumstances known to the officer at the conclusion of the initial traffic stop. *Id.* The Court held that the officer's detention, canine sniff, and search subsequent to the initial traffic stop was justified and lawful. *Id.*

The matter now before the Court provides facts analogous to those presented in *Lopez*. Officer Teichelman testified that the I-40 corridor is routinely used for narcotic and human trafficking.[47] During the course of the traffic stop, Officer Teichelman observed that Plaintiff's driver's license was from New Jersey.[48] When questioned about his travel plans, Plaintiff's responses were short, incomplete, and he was unable to provide information about his general travel itinerary, hotel accommodations, or length of stay.[49] Given the totality of the circumstances, Officer Teichelman developed a reasonable suspicion of criminal activity during his questioning of Plaintiff.[50] At this point, Officer Teichelman determined he needed to question the passenger

---

[47] Appx. 002 at ¶5.
[48] Appx. 002 at ¶6.
[49] Appx. 002 at ¶6.
[50] Appx. 002 at ¶6.

in order to dispel his reasonable suspicion of criminal activity.[51] There also appeared to be a large age gap between the male driver and female passenger.[52] When questioned, the female passenger appeared nervous, scared, timid, and failed to make eye contact with Officer Teichelman.[53] Similar to the Plaintiff, the passenger could not provide any details regarding their travel plans.[54]

After questioning the passenger, Officer Teichelman's suspicion of criminal activity increased, and he asked Plaintiff if his canine could sniff the outside of the vehicle.[55] Plaintiff refused to consent.[56] Taking in account all the facts known, Officer Teichelman believed he had reasonable suspicion to conduct the sniff without consent.[57] Officer Teichelman conducted the sniff with his canine, who was in his patrol vehicle.[58] The canine alerted to the odor of narcotics, and Officer Teichelman conducted a search of the vehicle.[59] Officer Teichelman did not find any narcotics during the search, and Plaintiff and the passenger left the traffic stop with a warning regarding speeding and displaying an obscured license plate/registration.[60]

A law enforcement officer may ask questions on subjects unrelated to circumstances that caused the stop, so long as these unrelated questions do not extend the duration of the stop. *Pack*, 612 F.3d at 350. Officer Teichelman asked questions and received the answers to those questions during the regular course of the initial stop. The evidence and facts known to Officer Teichelman support Officer Teichelman's argument that he developed reasonable suspicion of criminal activity during the initial stop and questioning.

---

[51] Appx. 002 at ¶7.
[52] Appx. 002 at ¶5.
[53] Appx. 002 at ¶7; "[N]ervous, evasive behavior" is a "pertinent factor" from which officers may deduce reasonable suspicion of criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).
[54] Appx. 002 at ¶7.
[55] Appx. 003 at ¶8.
[56] [Doc. 1] at ¶18.
[57] Appx. 003 at ¶8.
[58] Appx. 003 at ¶8.
[59] Appx. 003 at ¶8.
[60] Appx. 003 at ¶8.

13

The second prong of *Terry* requires Officer Teichelman's actions after the initial stop, including the canine free-air sniff, to be reasonably related to the circumstances that justified the detention. *See U.S. v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). The circumstances that justified Officer Teichelman's detention involved facts and circumstances related to criminal activity, including possible human or narcotic trafficking. Therefore, Officer Teichelman's request for a canine to conduct a free-air sniff to detect the odor of illegal narcotics and subsequent search of the vehicle based on the canine alert are reasonably related to the circumstances that justified the detention. Therefore, Officer Teichelman is entitled to qualified immunity, and the claims against him should be dismissed.

## **Prayer**

For these reasons, Defendant Steve Coy Teichelman prays that the Court grant this motion and dismiss Plaintiff's claims against Defendant. Defendant prays for such other and further relief to which it may show itself entitled.

Respectfully submitted,

*/s/ Brad R. Timms*
Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
P.O. Box 9158
Amarillo, Texas  79105
Tel:  (806) 376-5613
Fax:  (806) 379-0316

                Brad R. Timms
                State Bar No. 24088535
                brad.timms@uwlaw.com
                UNDERWOOD LAW FIRM, P.C.
                1008 Macon Street, Suite 101
                Fort Worth, Texas 76102
                Tel: (817) 885-7529
                Fax: (817) 439-9922

                ATTORNEYS FOR DEFENDANT STEVE COY TEICHELMAN

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 28th day of September, 2022.

                */s/ Brad R. Timms*
                Brad R. Timms