## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| YOEL WEISSHAUS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:22-cv-00035-z |
| | § | |
| STEVE COY TEICHELMAN, and | § | |
| 100th JUDICIAL DISTRICT, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT COY TEICHELMAN'S MOTION FOR SUMMARY JUDGMENT:

Respectfully submitted,

/s/ Breanta Boss
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721
BREANTA BOSS
Texas Bar No. 24115768

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Dallas, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

Attorneys for the Plaintiff

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. 3

I.    INTRODUCTION ......................................................................................... 7

II.   SUMMARY JUDGMENT EVIDENCE ......................................................... 8

III.  STANDARD OF REVIEW ........................................................................... 8

  1.   SUMMARY JUDGMENT ........................................................................ 8

  2.   QUALIFIED IMMUNITY ......................................................................... 9

IV.   DISPUTED FACTS FROM DEFENDANT'S AFFIDAVIT ............................... 11

V.    BACKGROUND ......................................................................................... 12

VI.   ARGUMENT AND AUTHORITIES ............................................................. 15

  A.   Defendant violated Mr. Weisshaus' right to be free from unreasonable searches and
       seizures under the Fourth Amendment by way of an illegally prolonged detention. ........ 15

    1.   Clearly Established Law on Unlawful Detention .......................................... 15

  B.   Defendant violated Mr. Weisshaus' right to be free from unreasonable searches and
       seizures under the Fourth Amendment by way of an illegal search. ................................ 22

    1.   Clearly Established Law on Unlawful Searches ........................................ 22

VII.  CONCLUSION ........................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Creighton*,
  483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) .................................................. 10

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ................................................... 8

*Ashcroft v. al-Kidd*,
  563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) ............................................ 11

*Babb v. Dorman*,
  33 F.3d 472, 477 (5th Cir. 1994)........................................................................................... 10

*Burdeau v. McDowell*,
  256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) .................................................................. 23

*Connors v. Graves*,
  538 F.3d 373, 377 (5th Cir. 2008)........................................................................................ 22

*Davis v. State*,
  947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (en banc)................................................ passim

*Delaware v. Prouse*,
  440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) ...................................................... 15

*Florida v. Royer*,
  460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983) .................................... 17

*Foster v. City of Lake Jackson*,
  28 F.3d 425, 429 (5th Cir. 1994).......................................................................................... 10

*Gibson v. Rich*,
  44 F.3d 274, 277 (5th Cir. 1995).......................................................................................... 10

*Haas v. State*,
  172 S.W.3d 42, 50 (Tex.App.-Waco 2005, pet. ref'd) ........................................................... 18

*Haggerty v. Texas Southern University*,
  391 F.3d 653, 655 (5th Cir. 2004)........................................................................................ 23

*Harlow v. Fitzgerald*,
  457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) .................................................. 9

*Illinois v. Caballes*,
543 U.S. 405, 407, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005) ....................................... 17, 18

*Knowles v. Iowa*,
525 U.S. 113, 118, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998) ............................................ 17

*Kothe v. State*,
152 S.W.3d 54, 62 (Tex. Crim. App. 2004) ...................................................................... 18, 23

*Lytle v. Bexar County, Tex.*,
560 F.3d 404, 408 (5th Cir. 2009) .......................................................................................... 8

*Malley v. Briggs*,
475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ................................................ 10

*Manis v. Lawson*,
585 F.3d 839, 843 (5th Cir. 2009) .......................................................................................... 8

*McQuarters v. State*,
58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd ................................... 19, 20, 22

*Mullenix v. Luna*,
577 U.S. 7, 12, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) ................................................ 9

*Ohio v. Robinette*,
519 U.S. 33, 41, 117 S.Ct. 417, 419, 136 L.Ed.2d 347 (1996) ................................................ 18

*Pearson v. Callahan*,
555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) .................................................. 9

*Peterson v. City of Fort Worth, Tex.*,
588 F.3d 838, 845 (5th Cir. 2009) ......................................................................................... 15

*Saucier v. Katz*,
533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); ............................................... 9

*Scott v. Harris*,
550 U.S. 372, 377, 127 S. Ct. 1769, 1774 (2007) ............................................................... 9, 10

*Sieffert v. State*,
290 S.W.3d 478, 485–86 (Tex. App.—Amarillo 2009, no pet.) ......................................... 19, 21

*Stefanoff v. Hays County*,
154 F.3d 523, 525 (5th Cir. 1998) .................................................................................... 10, 11

*Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*,
   310 F.3d 870, 877 (5th Cir. 2002) ............................................................................... 9

*Terry v. Ohio*,
   392 U.S. 1, 9 (1968) ............................................................................... 15, 16, 17, 22

*Terry v. Ohio. Berkemer v. McCarty*,
   468 U.S. 420, 436, 439, 104 S.Ct. 3138, 3148, 3150, 82 L.Ed.2d 317 (1984) ........................ 22

*Thompson v. State*,
   408 S.W.3d 614, 625 (Tex.App.-Austin 2013, no pet.) ............................................................. 20

*TIG Ins. Co. v. Sedgwick James of Washington*,
   276 F.3d 754, 759 (5th Cir. 2002) ............................................................................... 8

*Tolan v. Cotton*,
   572 U.S. 650, 655-56, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014) ...................................... 9, 10

*U.S. v. Lopez–Moreno*,
   420 F.3d 420, 429–434 (5th Cir.2005) ............................................................................... 16

*United States v. Arvizu*,
   534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) ..................................................... 16

*United States v. Breelan*,
   53 F.3d 100, 102 (5th Cir.1995) ............................................................................... 16

*United States v. Brigham*,
   382 F.3d 500, 506 (5th Cir.2004) (en banc) ..................................................................... passim

*United States v. Cortez*,
   449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) ...................................................... 16

*United States v. Grant*,
   349 F.3d 192, 196 (5th Cir.2003) ............................................................................... 19

*United States v. Hensley*,
   469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985) .............................................. 17

*United States v. Jones*,
   234 F.3d 234, 241 (5th Cir. 2000) ............................................................................... 16

*United States v. Kelley*,
   981 F.2d 1464, 1470 (5th Cir.1993) ............................................................................... 18

*United States v. Machuca–Barrera*,
 261 F.3d 425, 432 (5th Cir. 2001) ........................................................................... 18

*United States v. Santiago*,
 310 F.3d 336, 340 (5th Cir.2002) ........................................................................... 16

*United States v. Shabazz*,
 993 F.2d 431, 436 (5th Cir.1993) ........................................................................... 17

*United States v. Sharpe*,
 470 U.S. 675, 685–86, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985) .................................... 18

*United States v. Valadez*,
 267 F.3d 395, 397 (5th Cir.2001) .............................................................. 15, 18, 22

**Constitutional Provisions**

U.S. Const. amend. IV ..................................................................................... 22

**TO THE HONORABLE DISTRICT COURT JUDGE:**

COMES NOW, Plaintiff, YOEL WEISSHAUS hereinafter referred to as ("Mr. Weisshaus" or "Plaintiff"), and files this brief in support of his response to Coy Teichelman's ("Teichelman" or "Defendant") Motion for Summary Judgment under Fed. R. Civ. P. Rule 56. In support thereof, Plaintiff respectfully shows the Court as follows:

## I.
## INTRODUCTION

On March 2, 2020, Plaintiff Yoel Weisshaus initiated this cause of action by filing his Original Complaint alleging that Defendant Officer Steve Coy Teichelman employed with the 100th Judicial District Traffic Enforcement Division conducted a traffic stop on him and alleging that even though the purpose for the stop had conducted, Defendant Teichelmen illegally prolonged the detention by detaining Mr. Weisshaus and searching his vehicle. (ECF 1). This was because absent reasonable suspicion, Defendant Teichelman's extension of the traffic stop violated Mr. Weisshaus's Fourth Amendment rights under the United States Constitution to be free from unreasonable search and seizure as well as illegal detention. (ECF 1). On September 28, 2022, Defendant filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. (ECF 27). Mr. Weisshaus now files this response.

Defendant's motion should be denied as there are genuine disputes of material fact concerning (1) whether Defendant had probable cause or reasonable suspicion to support detaining Mr. Weisshaus after the purposes of the traffic stop had concluded as Mr. Weisshaus was not suspected of committing a crime and was not in the process of committing a crime when he was instructed not to leave and (2) whether an illegal search of Plaintiff's vehicle was conducted as Defendant had no probable cause, warrant, exception to the warrant requirement, nor consent.

## II.
## SUMMARY JUDGMENT EVIDENCE

Plaintiff supports his Response to Defendant's Motion for Summary Judgment by incorporating by reference and relying on the evidence in the accompanying Appendix filed with this Brief. Plaintiff's Appendix contains the following Exhibits[1]:

Plaintiff's Appendix Exhibit A:    Declaration of Plaintiff Yoel Weisshaus;

Plaintiff's Appendix Exhibit B:    Traffic Warning Received by Plaintiff Yoel Weisshaus.

## III.
## STANDARD OF REVIEW

1.  SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 249. If the determination of qualified immunity would require the resolution of a genuinely disputed fact, then that fact is material. *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 408 (5th Cir. 2009). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002). To avoid summary judgment on a qualified immunity defense, the plaintiffs must show more than "mere allegations." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

---

[1] Plaintiff directs the Court's attention to the page numbers on the bottom right of the appendix as the ones referenced in this brief.

In deciding whether there are genuine disputes of material fact precluding summary judgment, "all of the evidence introduced and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). Even in cases of qualified immunity, the evidence must be viewed in the light most favorable to the non-movant. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001); *Scott v. Harris*, 550 U.S. 372, 377, 127 S. Ct. 1769, 1774 (2007).

2.   QUALIFIED IMMUNITY

"The [judicially created] doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). When a defendant moves for summary judgment on the basis of qualified immunity, the court must decide: (1) whether the facts, taken in the light most favorable to the plaintiff, show the officer's conduct violated a constitutional right; and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *See Tolan v. Cotton*, 572 U.S. 650, 655-56, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014).

A court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656. And courts must view the facts and draw reasonable inferences

in favor of the nonmovant. *Id*. at 657; *see also Scott,* 550 U.S. 372 at 378 ("In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts.").

A right is "clearly established" when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper. See *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful, given pre-existing law. *Anderson*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F. 3d. 866, 871-72 (5th Cir. 1997).

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official could have believed that his conduct was lawful, given clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). An official's conduct is not protected by qualified immunity if, given clearly established pre-existing law, it was apparent the conduct, when undertaken, would violate the right at issue. *Foster*, 28 F.3d at 429.

To preclude qualified immunity, it is unnecessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like situated,

10

reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce*, 117 F.3d at 882 (emphasis in original); and *Stefanoff*, 154 F.3d at 525. Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) (citations omitted).

## IV.
## DISPUTED FACTS FROM DEFENDANT'S AFFIDAVIT

Plaintiff disputes the following facts from Defendant's Affidavit included in support of Defendant's Motion for Summary Judgment.

1. "The I-40 corridor I regularly patrol is routinely used for human and drug trafficking." (Defendant Appx. 002 at 5).

   a. Plaintiff does not have sufficient information or belief to deny, but for purposes of this Motion denies.

2. "On March 2, 2020, I observed Yoel Weisshaus speeding and displaying an obscured license plate/registration insignia as he drove on I-40. I pulled over Mr. Weisshaus over based on these traffic violations." (Defendant App. 002 at ¶5).

   a. Mr. Weisshaus was traveling below the speed limit and his front and rear license plates were clearly visible. (Plaintiff Appx. 003 at ¶19).

3. "Mr. Weisshaus was short with his responses and was unable to provide any details as to a general itinerary, hotel accommodations, or length of stay at his destination." (Defendant Appx. 002 at ¶6).

   a. Mr. Weisshaus answered he was traveling to Scottsdale, Arizona to help Ms. Lee move her belongings to New Jersey. (Plaintiff's Appx. 003 at ¶24).

    b.  Defendant asked about Mr. Weisshaus' relationship to Ms. Lee, and he informed Defendant that they are friends. (Plaintiff's Appx. 003 at ¶25).

4.  "Kobra gave me a passive alert to the scent of narcotics." (Defendant's Appx. 003 at ¶8).

    a.  There were no illegal narcotics inside of Plaintiff's vehicle. (Plaintiff's Appx. 005 at ¶44).

    b.  The K9 neither sat, barked, or stopped to indicate there was a positive alert for drugs. (Plaintiff's Appx. 004 at ¶37).

    c.  No narcotics were found during the search of Plaintiff's vehicle. (Defendant's Appx. 005 at ¶44).

5.  Plaintiff repeats and incorporates fully his argument above in the section of this pleading titled, "OBJECTION TO DEFENDANT'S SUMMARY JUDGMENT EVIDENCE."

## V.
## BACKGROUND

On March 2, 2020, Plaintiff Yoel Weisshaus drove through Texas en route from Oklahoma to assist his friend Sasha Lee move. (Plaintiff Appx. 001-002 at ¶¶5&8). During this trip, Defendant Steve Coy Teichelman, an officer working for the 100th Judicial District Traffic Enforcement Division conducted a traffic stop on Mr. Weisshaus and Ms. Lee. (Plaintiff Appx. 002 at ¶12). The alleged purpose for the traffic stop was speeding and displaying an obscured license plate/registration insignia. (Plaintiff Appx. 003 at ¶18).

However, Mr. Weisshaus was traveling below the speed limit and his front and rear license plates were clearly visible. (Plaintiff Appx. 003 at ¶19). At the time of the traffic stop, Mr. Weisshaus did not have any warrants or suspensions pending. (Plaintiff Appx. 002 at ¶14). At the time of the traffic stop, Mr. Weisshaus' registration of his vehicle was in good standing with the State of New Jersey. (Plaintiff Appx. 002 at ¶15).

Defendant requested to see Mr. Weisshaus' driver's license and registration which Mr. Weisshaus provided.[2] (Plaintiff Appx. 003 at ¶ 20). Defendant requested that Mr. Weisshaus step out of his vehicle and follow him to his patrol vehicle while Defendant processed a warning. (Plaintiff Appx. 003 at ¶21). Defendant instructed Mr. Weisshaus to sit in the front seat of his patrol vehicle while he printed out a warning. (Plaintiff Appx. 003 at ¶21).

While in Defendant's unmarked patrol vehicle as Defendant was engaged in processing the traffic warning, Defendant asked Mr. Weisshaus to disclose the origin of his departure and destination. (Plaintiff Appx. 003 at ¶23).  Mr. Weisshaus answered he was traveling to Scottsdale, Arizona to help Ms. Lee move her belongings to New Jersey. (Plaintiff Appx. 003 at ¶24). Defendant asked about Mr. Weisshaus' relationship to Ms. Lee, and Mr. Weisshaus informed Defendant he and Ms. Lee are friends. (Plaintiff Appx. 003 at ¶25).

Defendant informed Mr. Weisshaus that he was free to leave after handing Mr. Weisshaus the warning and returning his driver's license, demonstrating that Mr. Weisshaus was not suspected of any other crimes during the course of the traffic stop. (Plaintiff Appx. 003 at ¶26). At this point the purpose for the stop had ended and there was no longer a legal reason for Defendant to detain Mr. Weisshaus. (Plaintiff Appx. 003 at ¶26-27).

However, Defendant then asked Mr. Weisshaus if he would consent to a search of his vehicle. (Plaintiff Appx. 004 at ¶32). Mr. Weisshaus declined to give consent for a search of his vehicle. (Plaintiff Appx. 004 at ¶32). Defendant informed Mr. Weisshaus under Texas law, if a dog alerts to narcotics in a vehicle, there would be probable cause to search without consent. (Plaintiff App. 004 at ¶33).

---

[2] At no point did Defendant ask for Ms. Lee's driver license or any other form of identification. (Appx. 005 at ¶41).

Defendant directed Mr. Weisshaus not to leave as he walked his K9 unit around Mr. Weisshaus' vehicle. (Plaintiff Appx. 004 at ¶34). Defendant did not have facts giving rise to reasonable suspicion that a crime had been committed by Mr. Weisshaus of which evidence would be found inside of the vehicle, as the initial reason for the stop was due to traffic violations which Defendant had just given Mr. Weisshaus a warning and Mr. Weisshaus had committed no criminal violations while in the presence of Defendant. (Plaintiff Appx. 001-005 at ¶¶ 1-52).

The K9 neither sat, barked, or stopped to indicate there was a positive alert for drugs. (Plaintiff Appx. 004 at ¶37). This is because there were no illegal narcotics inside of the vehicle. (Plaintiff Appx. 005 at ¶44). However, Defendant returned the K9 to the police cruiser and stated that the K9 alerted to drugs inside Mr. Weisshaus' vehicle. (Plaintiff App. 004 at ¶ 38).

Defendant then proceeded to perform a search of Mr. Weisshaus' vehicle. (Plaintiff Appx. 005 at ¶42).  During the search, Defendant ripped out the lining of the seats of Mr. Weisshaus' vehicle and tossed out the luggage of Mr. Weisshaus and Ms. Lee. (Plaintiff Appx. 005 at 43). After the search of Mr. Weisshaus' vehicle did not turn up any illegal contraband, Defendant insisted on patting Mr. Weisshaus down which Mr. Weisshaus declined. (Plaintiff Appx. 005 at ¶¶44-45).

Mr. Weisshaus asked to leave. (Plaintiff Appx. 005 at ¶46). Defendant told Mr. Weisshaus he was detained for refusing to comply with his orders. (Plaintiff Appx. 005 at ¶47). However, Mr. Weisshaus had not refused to comply with Defendant's orders but had simply verbally declined the illegal search Defendant was attempting to perform on Mr. Weisshaus' person. (Plaintiff Appx. 005 at ¶44-¶45).

Only then when Mr. Weisshaus asked to leave a third time did Defendant allow Mr. Weisshaus to leave. (Plaintiff Appx. 005 at ¶¶48-51). The entire encounter lasted approximately

twenty minutes. (Plaintiff Appx. 005 at ¶51). At all relevant times, Defendant was employed with the 100th Judicial District Traffic Enforcement Division and acting under the color of law when he performed the traffic stop with his department issued vehicle and the search with his department issued K9. (Plaintiff Appx. 002 at ¶13). Mr. Weisshaus suffered injuries as a result of the illegal search and illegal detention performed by Defendant. (Plaintiff Appx. 005 at ¶52).

## VI.
## ARGUMENT AND AUTHORITIES

Defendant's motion should be dismissed as (1) Defendant illegally detained Mr. Weisshaus without reasonable suspicion, (2) illegally seized Mr. Weisshaus, and (3) clearly established law put the Defendant on notice that his conduct violated Mr. Weisshaus' constitutional rights under the Fourth Amendment.

**A. Defendant violated Mr. Weisshaus' right to be free from unreasonable searches and seizures under the Fourth Amendment by way of an illegally prolonged detention.**

1. Clearly Established Law on Unlawful Detention

Undoubtedly, no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, to be free from all restraint or interference of others, unless by clear and unquestionable authority of law. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Unlawful detention implicates the Fourth Amendment's proscription against unreasonable seizures. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009); *Terry*, 392 U.S. at 16 ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). Traffic stops are considered seizures within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir.2001).

Under the two-part *Terry* reasonable suspicion inquiry, in assessing the legality of a traffic stop, the court must determine whether the officer's action was: (1) "justified at its inception" and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20; *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir.2004) (en banc); *U.S. v. Lopez–Moreno*, 420 F.3d 420, 429–434 (5th Cir.2005). For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. *United States v. Breelan*, 53 F.3d 100, 102 (5th Cir.1995).

The Supreme Court has stated that in making a reasonable suspicion inquiry, a court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis ' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir.2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. *Arvizu*, 534 U.S. at 274.

In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. *Terry*, 392 U.S. at 27; *United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000). It is also clear, however, that reasonable suspicion need not rise to the level of probable cause. *Arvizu*, 534 U.S. at 274.

The "scope" of an investigative detention is limited by the second prong of *Terry* both as to the duration of the detention and as to the manner in which the investigation is carried out. "[A]n

investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop [and] ... the investigat[ory] methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion...." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229 (1983); *United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 683, 83 L.Ed.2d 604 (1985) (examining under *Terry* both "the length and intrusiveness of the stop and detention"); *Brigham*, 382 F.3d at 507.  A detention that is not temporary nor reasonably related in scope to the circumstances that justified the stop is unreasonable and, thus, violative of the Fourth Amendment. *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (en banc). To be reasonably related in scope, the investigation must be limited by the justification for the stop. *Terry*, 392 U.S. at 29, 88 S.Ct. at 1884.

Said differently, an investigative detention must be "strictly circumscribed by the exigencies which justify its initiation." *Id*. at 25–26, 88 S.Ct. at 1882; *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998) (invalidating statute authorizing full search of automobile incident to citation for speeding since "[n]o further evidence of excessive speed [ing] was going to be found" once vehicle was stopped and citation issued). A seizure reasonable at its inception may nevertheless violate the Fourth Amendment by its excessive intensity and scope. *Davis*, 947 S.W.2d at 243. The nature of questioning during the latter part of a detention may, itself, indicate that the justification for the original detention no longer exists. *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993).

 A seizure lawful at its inception may violate the Fourth Amendment by the "manner of execution" of the investigation.  *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 837, 160 L.Ed.2d 842 (2005). To determine whether the duration of an investigative detention is reasonable, the relevant question is "whether the police diligently pursued a means of investigation that was

likely to confirm or dispel their suspicions quickly..." *United States v. Sharpe*, 470 U.S. 675, 685–86, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).

The permissible duration is measured by the time reasonably necessary to complete a brief investigation of the matters that justified the stop. *Haas v. State*, 172 S.W.3d 42, 50 (Tex.App.-Waco 2005, pet. ref'd) (citing *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir.1993)) (noting, under appropriate circumstances, extensive questioning about matters wholly unrelated to routine traffic stop may violate Fourth Amendment). Specifically, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Caballes*, 543 U.S. at 407, 125 S.Ct. at 837.

A detention may not be unnecessarily prolonged solely in hopes of finding evidence of some other crime. *Kothe v. State,* 152 S.W.3d 54, 62 (Tex. Crim. App. 2004); *Valadez*, 267 F.3d at 398 (continued questioning on unrelated matter and computer check on warrants and criminal history impermissible where officer's suspicions on which stop was based had already been dispelled); *United States v. Machuca–Barrera*, 261 F.3d 425, 432 (5th Cir. 2001) (once reason for stop has been satisfied, detained individual must be free to leave). The stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 419, 136 L.Ed.2d 347 (1996) (Ginsberg, J., concurring)).

For instance, in the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. *Brigham,* 382 F.3d at 507–08. An officer may also ask the driver about the purpose and itinerary of his trip. *Id.* at 508.

Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." *Id.*

**Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention.** *Brigham*, 382 F.3d at 510(emphasis added).  A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed. *Brigham*, 382 F.3d at 507; *United States v. Grant*, 349 F.3d 192, 196 (5th Cir.2003).

After completion of the purposes of the initial stop, the officer must have reasonable suspicion to believe that further criminal activity has occurred or is being committed to justify further detention of the suspect. *Davis,* 947 S.W.2d at 244; *McQuarters v. State*, 58 S.W.3d 250, 255 (Tex. App.—Fort Worth 2001, pet. ref'd; *Sieffert v. State*, 290 S.W.3d 478, 485–86 (Tex. App.—Amarillo 2009, no pet.).. For example, in *Davis*, after an officer determined that the driver was not intoxicated—the basis for the original stop—and completed the driver's license check and criminal history check, the officer continued to detain Davis because he did not look like someone traveling on a business trip. *Davis,* 947 S.W.2d at 245.

However, in *Davis*, the Texas Court of Criminal Appeals stated this conclusion was not based upon any articulable facts, that taken together with reasonable inferences from those facts, would provide reasonable suspicion that continued detention was warranted. *Id.*  For example, in *McQuarters*, a driver was stopped because the officer felt the driver was either falling asleep at the wheel or was intoxicated after observing his slow speed and the fact that the car drifted out of

its lane on a couple of occasions. *McQuarters,* 58 S.W.3d at 253.Yet, an interview with the driver dispelled the notion he was intoxicated. *Id.*

Eventually after issuing the warning tickets, the officer asked if there was anything of an "illegal nature" in the car. *Id.* The driver answered no, and the officer asked for consent to search, which was refused. *Id.* At that point in time the officer just "felt like" he had reasonable suspicion that the driver had narcotics in the vehicle. *Id.*

Therefore, the officer continued detention until a K-9 unit could be brought to the site. *Id.* The K-9 unit alerted to the vehicle and nine to ten pounds of marihuana were found in the trunk. *Id.* Based on upon those facts, the Fort Worth Court of Appeals held that, when considering the totality of the circumstances, including the 53 personal experience, reasonable suspicion that the driver was hiding narcotics in the car could not be rationally inferred from these facts. *Id.* at 257; *Thompson v. State*, 408 S.W.3d 614, 625 (Tex.App.-Austin 2013, no pet.) (disagreeing with officer's characterization of appellants account of trip as "confused" and observing that simply because officer calls story confusing does not make it so).

Here, after the reason for the stop had concluded, Defendant intentionally detained Plaintiff without a warrant, without Plaintiff's consent and without any legal justification as Defendant told Mr. Weisshaus he was not free to leave, and Mr. Weisshaus was not allowed back in his vehicle despite already being issued a warning and being originally that he was free to leave. (Plaintiff Appx. 003-005 at ¶¶ 26-52). Defendant did not have probable cause nor reasonable suspicion to support detaining Mr. Weisshaus after the purposes of the traffic stop had concluded as Mr. Weisshaus was not suspected of committing a crime and was not in the process of committing a crime when he was instructed not to leave. (Plaintiff Appx. 001-005 at ¶¶26-52). As a result of the illegal detention, Plaintiff suffered injuries. (Plaintiff App. 005 at ¶52).

Defendant attempts to justify his illegal detention of Mr. Weisshaus by stating he developed reasonable suspicion based on the following facts: Mr. Weisshaus was an out of state resident, provided short responses, did not provide specific details about his travel arrangements, and was traveling with a younger female with no familial connection. (Doc 27 p. 4). Notably, the Defendant admits he "asked questions and **received the answers** to those questions during the regular course of the initial stop." (Doc 27 p. 4). Defendant also conclusory makes several references to Mrs. Lee being a younger female, but curiously never asked for her identification during the course of the stop. (Plaintiff Appx. 005 at ¶41). [3]

According to the Court in *Sieffert v. State*:

"Although the time of day and the level of criminal activity in an area may be factors to consider in determining reasonable suspicion, they are not suspicious in and of themselves; *Hudson v. State*, 247 S.W.3d 780, 786–87 (Tex.App.-Amarillo 2008, no pet.); *Green v. State*, 256 S.W.3d 456, 462 (Tex.App.-Waco 2008, no pet.), and that detainees were seen or found in a  high crime area alone does not warrant reasonable suspicion. *Gurrola v. State*, 877 S.W.2d 300, 303 (Tex.Crim.App.1994); *Amorella v. State*, 554 S.W.2d 700, 701 (Tex.Crim.App.1977). Neither does nervousness; *Green*, 256 S.W.3d at 462; *LeBlanc v. State*, 138 S.W.3d 603, 608 n. 6 (Tex.App.-Houston [14th Dist.] 2004, no pet.), by themselves, warrant reasonable suspicion."

290 S.W.3d 478 at 484–85. Thus, simply because Mr. Weisshaus was traveling on a "know drug corridor" this by itself does not warrant reasonable suspicion. *Id*.

Courts have held that it is certainly not uncommon for most citizens—whether innocent or guilty—to exhibit signs of nervousness when confronted by a law enforcement officer. *Davis*, 947 S.W.2d 240 at 248 (concurring opinion) ("as for appellant acting nervous, it was 1 A.M., he was tired, and he was a resident of a distant state stopped late at night by the police in a relatively rural area. Under such circumstances, many, if not most, people would be nervous. It is not indicative

---

[3] Mrs. Lee is actually older than Mr. Weisshaus. (Appx. 001 at ¶6).

of guilt for a person to be nervous when confronted by police officers asking questions."). Defendant had no prior acquaintance with Ms. Lee which enabled the Defendant to contrast Ms. Lee's behavior during the traffic stop with her usual demeanor. Therefore, Ms. Lee's demeanor during the detention should be discounted given the generic claim of nervousness. *McQuarters*, 58 S.W.3d at 256 ("appellant's nervousness is a weak indicator of hidden narcotics.") *Davis,* 947 S.W.2d 240 at 248.

Accordingly, as there are genuine disputes of material fact Defendant's motion should be denied.

**B.  Defendant violated Mr. Weisshaus' right to be free from unreasonable searches and seizures under the Fourth Amendment by way of an illegal search.**

1.  Clearly Established Law on Unlawful Searches

The Fourth Amendment to the United States Constitution guarantees people the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "The right of the people to be secure in their persons" guarantees individuals a reasonable expectation of privacy, whether in their homes or on the street. *Terry*, 392 U.S. at 8-9. The temporary detention of individuals during a traffic stop has been characterized as a "seizure" of persons within the meaning of the Fourth Amendment. *Brigham*, 382 F.3d 500.  Routine traffic stops are analogous to investigative detentions and are governed by the principles articulated in *Terry v. Ohio*. *Berkemer v. McCarty*, 468 U.S. 420, 436, 439, 104 S.Ct. 3138, 3148, 3150, 82 L.Ed.2d 317 (1984) (noting traffic stop "significantly curtails the 'freedom of action' of the driver and the passengers" alike); *Valadez*, 267 F.3d at 397–98.

To prevail on a claim for unlawful seizure a plaintiff must allege facts that if true show that the defendant police officer lacked reasonable suspicion to detain or probable cause to arrest the Plaintiff. *Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (discussing showing of no probable

cause with respect to claim for unlawful seizure); *Haggerty v. Texas Southern University*, 391 F.3d 653, 655 (5th Cir. 2004).

The Court must determine whether the search and seizure was reasonably related, in scope, to the circumstances that justified the stop in the first place. *Kothe,* 152 S.W.3d at 62. In making this determination the scope of a *Terry* investigative stop can last no longer than necessary to effect the purpose to stop. *See id.* A search under the Fourth Amendment occurs when a governmental agent or employee or agent of the government violates an individual's reasonable expectation of privacy. *Burdeau v. McDowell*, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

Here, the Defendant, acting under the color of law, was a governmental employee when he performed the traffic stop on Mr. Weisshaus and searched his vehicle. (Plaintiff Appx. 003 at ¶13). Defendant did not have a warrant to search Mr. Weisshaus' vehicle. (Plaintiff Appx. 004 at ¶32). Defendant did not have probable cause to search Mr. Weisshaus' vehicle as Defendant was not aware of any facts that evidence of a crime would be found inside of the vehicle as the reason for the stop was due to traffic offenses and no new information of criminal activity arose during the detention. (Plaintiff Appx. 001-005 at ¶1-52).

Defendant did not have consent to search Mr. Weisshaus' vehicle as Mr. Weisshaus expressly denied consent to search. (Plaintiff Appx. 004 at ¶32). No other exception permitted Defendant to search Mr. Weisshaus' vehicle. (Plaintiff Appx. 001-005 at ¶1-52). As a result of the illegal search, Plaintiff suffered injuries. (Plaintiff Appx. 005 at ¶ 52).

In an attempt to justify his illegal search, Defendant states that his police K9 Kobra is registered and trained to alert with a passive response. (Doc 27 pg. 4). However, whether or not the K9 alerted is a fact which is genuinely disputed, especially since Defendant admits that after a search, he was unable to find any narcotics. (Doc 27 pg. 6). Additionally, Defendant simply

23

proclaims the K9 "passively alerted" but does not identify if the K9 sat or lay down upon—like he is trained to do—upon finding the alleged scent for narcotics in Mr. Weisshaus vehicle. (Doc 27, pgs. 2 & 8). According to Mr. Weisshaus, the K9 neither sat down, barked, nor moved.

Thus, viewing the facts in the light most favorable to Plaintiff, since there are genuine disputes of material fact, Defendant's motion should be denied.

## VII.
## CONCLUSION

Plaintiff respectfully submits that he has provided evidence creating genuine disputes of material fact for his cause of action against Defendant. Accordingly, Defendant's Motion should be denied. Plaintiff requests this Court to issue an order finding that qualified immunity is not appropriate, thereby allowing this case to proceed to a trial by jury, and grant Plaintiff all other relief to which he is justly entitled.

Respectfully submitted,

/s/ *Breanta Boss*
BREANTA BOSS
Texas Bar No. 24115768
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com
breanta@scottpalmerlaw.com

Attorneys for the Plaintiff

24

<u>**CERTIFICATE OF SERVICE**</u>

On October 19, 2022, this document was served on all parties through the ECF electronic filing system.

/s/ *Breanta Boss*
BREANTA BOSS