IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| YOEL WEISSHAUS, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| v. § | CIVIL ACTION NO. 2:22-cv-00035-Z |
| § | |
| STEVE COY TEICHELMAN, AND § | |
| 100TH JUDICIAL DISTRICT, § | |
| § | |
| DEFENDANTS. § | |

**DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT, AND IN THE ALTERNATIVE,
REPLY IN SUPPORT OF SUMMARY JUDGMENT**

COMES NOW, Defendant Steve Coy Teichelman ("Officer Teichelman" or "Defendant"), and moves to strike Plaintiff's Response to Defendant's Motion for Summary Judgment, and in the alternative, provides his reply in support of summary judgment:

**Motion to Strike**

Plaintiff's response is not timely pursuant to the Court's First Amended Scheduling Order. ("Order"). On September 7, 2022, the Court entered its Order.[1] With regard to "Summary Judgment/Dispositive Motion", the Court ordered:

> Any motion for summary judgment or other dispositive motion must be filed on or before **September 28, 2022**. The deadline imposed by the Local Rules for filing a motion for summary judgment does not apply in this case because the Court, by this Order, has established a different deadline. Counsel should carefully review Local Rule 56.2(b) which limits a party to filing one (1) summary judgment motion "[u]nless otherwise directed by the presiding judge, or permitted by law." Any response to the motion shall be filed **within**

---
[1] First Amended Scheduling Order, [Doc. 25].

1

> **14 days** after the motion is filed. Any reply shall be filed **within 7 days** after any response is filed.[2]

As provided under the Order, Defendant filed his Motion for Summary Judgment on September 28, 2022.[3] The Order states that "[a]any response to the motion shall be filed **within 14 days** after the motion is filed."[4] Fourteen days from September 28, 2022 is October 12, 2022.[5] Plaintiff filed his response on October 19, 2022—7 days after the deadline provided in the Order expired.[6]

The Rule 6(b)(1)(A) of the Federal Rules of Civil Procedure provides that, "for good cause," a court *may* extend a deadline before the original deadline or its extension expires. Plaintiff made no such request. A party seeking an after-the-fact extension, however, bears the heavier burden of demonstrating both "good cause" and "excusable neglect." *See* Fed. R. Civ. P. 6(b)(1)(B) ("[T]he court may, for good cause, extend the time . . . on motion made *after the time has expired* if the party failed to act because of excusable neglect.") (emphasis added).

Therefore, Plaintiff's response, supporting brief, and evidence opposing summary judgment should be stricken and not considered by the Court in deciding the Defendant's summary judgment motion. *See Rashid v. Delta State University*, 306 F.R.D. 530, 534 (N.D. Miss. April 17, 2015) ("Plaintiff's response and supporting memorandum opposing summary judgment will be stricken and not considered by this Court . . . ."); *see Jones v. Metro. Life Ins. Co.,* No. C–08–03971–JW DMR, 2010 WL 4055928, at *6 (N.D. Cal. Oct. 15, 2010) ("Based on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders.") (collecting authorities).

---

[2] [Doc. 25] at p. 5. (emphasis original).
[3] *See* Defendant's Motion for Summary Judgment, [Doc. 26]
[4] *See* [Doc. 25] at p. 5. (emphasis original).
[5] *See* Fed. R. Civ. P. 6(a); *see* [Doc. 25].
[6] *See* Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, [Doc. 29 & 30].

### In the Alternative, Reply in Support of Summary Judgment

**A. Plaintiff carries the burden to show qualified immunity is not proper.**

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). When qualified immunity has been raised, "[t]he moving party is not required to meet [his] summary judgment burden for a claim of immunity." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks omitted). Instead, "[i]t is sufficient that the movant in good faith pleads that [he] is entitled to qualified immunity. Once [he] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it." *Id.* (internal quotation marks and emphasis omitted).

The burden shifted to Plaintiff, and Plaintiff must negate qualified immunity. *Brown*, 623 F.3d at 253. This burden is not satisfied through a mere showing of "some metaphysical doubt as to the material facts" or by "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." Gaither v. Cruz, No. 2:15-CV-104-Z-BR, 2021 WL 495 882, at *3 (N.D. Tex. Jan. 6, 2021) (Reno, J.) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Instead, on summary judgment, "the plaintiff can no longer rest on the pleadings . . . [,] and the court looks to the evidence before it . . . ." *Id.* (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (internal quotation marks omitted).

**B. Officer Teichelman had reasonable suspicion there was criminal activity to investigate.**

Plaintiff's response relies exclusively on self-serving conclusory allegations and unsubstantiated assertions. Plaintiff relies extensively on the unsworn declaration of Yoel Weisshaus.[7] In a conclusory and unsubstantiated manner, Plaintiff states that "Defendant did not have probable cause nor reasonable suspicion . . . ," and "[Plaintiff] was not suspected of

---

[7] *See* [Doc. 30] at p. 20, 23.

3

committing a crime . . . ."[8] Plaintiff provides no basis or support for these statements. They are Plaintiff's unsubstantiated and conclusory assertions. Plaintiff admits that Defendant asked him several questions while sitting in the patrol vehicle.[9] It was during this initial questioning that Defendant developed a reasonable suspicion of criminal activity.[10]

Plaintiff makes no effort to distinguish *United States v. Lopez*, No. 2:21-CR-51-Z-(2), 2021 WL 5746006, at *2 (N.D. Tex. Dec. 2, 2021) (Kacsmaryk, J.). In *Lopez*, this Court held that detaining a driver and passenger—and conducting a canine sniff and vehicle search—after the traffic stop concluded was lawful where:

- The driver hesitated when asked about travel plans, and the driver could not provide specifics regarding travel plans;

- The passenger exhibited signs of nervousness despite being told only a warning was being issued; and

- The vehicle was stopped on I-40, a known corridor for narcotics trafficking.

*Id.* at *4. In *Lopez*, this Court held that the officer, or any other reasonable law enforcement officer, could have reasonably suspected the driver and the other occupant of the vehicle were involved in trafficking narcotics sufficient to support a canine sniff based on the totality of the facts and circumstances known to the officer at the conclusion of the initial traffic stop. *Id.* The Court held that the officer's detention, canine sniff, and search subsequent to the initial traffic stop was justified and lawful. *Id*.

---

[8] *See* [Doc. 30] at p. 20.
[9] *See* Declaration of Yoel Weisshaus, [Doc. 31] at p. 3.
[10] *See* Defendant's Brief in Support, [Doc. 27] at 12; Officer Teichelman's Affidavit, [Doc. 28] at ¶6; "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the vehicle's] occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *U.S. v. Pack*, 612 F.3d 341, 350 (5th Cir.), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). Reasonable suspicion is not the same as clairvoyant certainty; the reasonable suspicion inquiry "falls considerably short of 51% accuracy." *Kansas v. Glover*, ––– U.S. ––––, 140 S. Ct. 1183, 1188 (2020) (internal marks omitted).

4

The matter now before the Court provides facts analogous to those presented in *Lopez*, which were analyzed and compared in Defendant's brief in support of summary judgment.[11] Similar to *Lopez*, taking into account all the facts known, Officer Teichelman believed he had reasonable suspicion to conduct the sniff without consent.[12] Officer Teichelman conducted the sniff with his canine, who was in his patrol vehicle.[13] The canine alerted to the odor of narcotics, and Officer Teichelman conducted a search of the vehicle.[14]

**C. Kobra alerted, which provided probable cause for the search.**

Plaintiff alleges that the canine officer "neither sat once, barked nor stopped."[15] Based on Plaintiff's untrained observations of the canine, Plaintiff alleges that the canine did not provide an alert.[16] Canine alerting behavior is particular to the dog. Because each dog alerts in a different way, the dog's behavior must be interpreted by the handler. *United States v. Masterson*, 450 Fed. Appx. 348, 349 (5th Cir. 2011). In *Masterson*, the Fifth Circuit explained that just because a handler could "not identify any specific behavior that constitutes an alert," does not mean that the canine did not provide an alert. *Id.* The Fifth Circuit held that "each dog alerts in a different way, and the dog's behavior must be interpreted by his handler." *Id.* A canine's mere "change in behavior" or "increased respiration" can amount to an alert. *See id.*

Plaintiff also appears to allege that because no drugs were found in the vehicle, the search was not lawful.[17] A canine's alert provides probable cause when "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237,

---

[11] [Doc. 27] at p. 17-18.
[12] [Doc. 28] Appx. 003 at ¶8.
[13] [Doc. 28] Appx. 003 at ¶8.
[14] [Doc. 28] Appx. 003 at ¶8.
[15] [Doc. 31] at p. 8, ¶37.
[16] [Doc. 30] at p. 23-24.
[17] [Doc. 30] at p. 23.

248 (2013). The U.S. Supreme Court in *Harris* specifically addressed instances where drugs are not found after a canine alert: "[I]f the dog alerts to a car in which the officer finds no narcotics, the dog may not have made a mistake at all. The dog may have detected substances that were too well hidden or present in quantities too small for the officer to locate. Or the dog may have smelled the residual odor of drugs previously in the vehicle or on the driver's person." *Id.* at 245-46. Because drugs were not found provides no evidence the canine did not smell narcotics or provide an alert.

### D. Plaintiff has not established a violation of clearly established law.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotations omitted). Clearly established law must be particularized to the facts of a case. *Id.* at 12. Thus, while a case need not be directly on point, precedent must still put the underlying question beyond debate. *Id.* District courts in this Circuit have been told that "clearly established law comes from holdings, not dicta." *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) (citations omitted). Courts "are to pay close attention to the specific context of the case" and not "define clearly established law at a high level of generality." *Anderson v. Valdez*, 913 F.3d 472, 476 (5th Cir. 2019) (quotations and citations omitted). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (quotations and citation omitted). To meet this high burden, the plaintiff must "point to controlling authority—or a robust consensus of

6

persuasive authority—that defines the contours of the right in question with a high degree of particularity." *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017) (quotations and citation omitted).

Plaintiff appears to offer facts from a single state-court case, *Davis v. State*, 947 S.W.2d 240 (Tex. Ct. Crim. App. 1997).[18] In *Davis,* the defendant was stopped for suspicion of driving while intoxicated. *Id.* at 241. The police officers determined that the defendant was not intoxicated but continued to detain him because they did not believe the defendant's explanation of his whereabouts. *Id.* There was no odor of alcohol or any type of drug emanating from the vehicle. *Id.* The officers conducted a pat-down search of the defendant but found no weapons or illegal drugs. *Id.* The officers told the defendant that he was free to leave but that the vehicle was being detained for an on-scene investigation and canine search. *Id.* The officers called a canine unit to the scene. *Id.* The canine arrived and made a positive alert at the trunk of the vehicle. *Id.* The officers conducted the search and found narcotics. *Id.*

The court ultimately held that the purpose of the stop concluded at the time the officers determined that the driver was not intoxicated. *Id.* at 245. The only reason the officers gave for the continued detention was their conclusion that the appellant did not appear to be someone who was on a business trip. *Id.* The court held that in order to detain the driver, the officers needed "articulable facts which, taken together with rational inferences from those facts, would warrant a man of reasonable caution in the belief that continued detention was justified." *Id.* (citing *Terry v. Ohio,* 392 U.S. 1, 20, 21-22 (1968)). The court held there was no facts or inferences that would suggest criminal activity. *Id.*

Here, the canine sweep and the temporary seizure of the vehicle occurred during a lawful investigation pursuant to a valid traffic stop. Plaintiff was not unreasonably detained while the

---

[18] *See* [Doc. 30] at p. 19-20.

investigation was completed. Plaintiff was pulled over for speeding and an obscured license plate on a known drug and human trafficking corridor. During the course of the traffic stop, Officer Teichelman observed that Plaintiff's driver's license was from New Jersey.[19] When questioned about his travel plans, Plaintiff's responses were short, incomplete, and he was unable to provide information about his general travel itinerary, hotel accommodations, or length of stay.[20] Given the totality of the circumstances, Officer Teichelman developed a reasonable suspicion of criminal activity during his questioning of Plaintiff.[21] At this point, Officer Teichelman determined he needed to question the passenger in order to dispel his reasonable suspicion of criminal activity.[22] When questioned, the female passenger appeared nervous, scared, timid, and failed to make eye contact with Officer Teichelman.[23] Similar to the Plaintiff, the passenger could not provide any details regarding their travel plans.[24] After questioning the passenger, Officer Teichelman's suspicion of criminal activity increased.[25]

The facts at issue and the facts from *Davis* differ in many ways. Plaintiff was not pulled over for suspicion of intoxication. Officer Teichelman did not tell Plaintiff he was free to leave but his vehicle was detained for further investigation, as was the case in *Davis*. Unlike the officers in *Davis*, Officer Teichelman has provided articulable facts which, taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that continued detention was justified.

---

[19] [Doc. 28] Appx. 002 at ¶6.
[20] [Doc. 28] Appx. 002 at ¶6.
[21] [Doc. 28] Appx. 002 at ¶6.
[22] [Doc. 28] Appx. 002 at ¶7.
[23] [Doc. 28] Appx. 002 at ¶7; "[N]ervous, evasive behavior" is a "pertinent factor" from which officers may deduce reasonable suspicion of criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).
[24] [Doc. 28] Appx. 002 at ¶7.
[25] [Doc. 28] Appx. 003 at ¶8.

**Prayer**

For these reasons, Defendant Steve Coy Teichelman prays that the Court grant this motion to strike, or in the alternative, grant summary judgment and dismiss Plaintiff's claims against Defendant. Defendant prays for such other and further relief to which it may show itself entitled.

Respectfully submitted,

*/s/ Brad R. Timms*
Slater C. Elza
State Bar No. 24000747
slater.elza@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
P.O. Box 9158
Amarillo, Texas 79105
Tel: (806) 376-5613
Fax: (806) 379-0316

Brad R. Timms
State Bar No. 24088535
brad.timms@uwlaw.com
UNDERWOOD LAW FIRM, P.C.
1008 Macon Street, Suite 101
Fort Worth, Texas 76102
Tel: (817) 885-7529
Fax: (817) 439-9922

ATTORNEYS FOR DEFENDANT STEVE COY TEICHELMAN

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document was served on all parties of record via the Court's Electronic Filing System on the 26th day of October, 2022.

*/s/ Brad R. Timms*
Brad R. Timms