

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| YOEL WEISSHAUS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:22-CV-035-Z-BR |
| | § | |
| STEVE COY TEICHELMAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment ("Motion") (ECF No. 26), filed on September 28, 2022. Having considered the Motion, briefing, and relevant law, the Court **GRANTS** the Motion and renders summary judgment in Defendant's favor.

**BACKGROUND**

This case arises out of a traffic stop that occurred on March 2, 2020. Plaintiff Yoel Weisshauss and passenger Sasha Lee were driving through Texas, en route from Oklahoma to Arizona. ECF No. 1 at 5. Plaintiff alleges he was pulled over by Defendant — an officer working for the 100th Judicial District Traffic Enforcement Division — for speeding and displaying an obscured license plate.[1] *Id.* Defendant identified Plaintiff as a middle-aged male and his passenger as an African-American female who appeared to be in her early 20s. ECF No. 27 at 10. Plaintiff's driver's license indicated he was from New Jersey. *Id.* Defendant asked Plaintiff to step out of his vehicle and sit in the front of Defendant's patrol vehicle while Defendant "processed a warning." ECF No. 1 at 5. While in the patrol vehicle, Defendant asked Plaintiff questions

---

[1] Plaintiff denies that he was speeding or that his vehicle displayed an obscured license plate. Plaintiff, however, does not appear to be challenging the lawfulness of the initial traffic stop. *See* ECF Nos. 29, 30 at 11.

regarding where he was traveling, how long he intended to stay at his destination, and his lodging plans. ECF No. 27 at 10. Defendant states Plaintiff was short with his responses and unable to provide any details.[2] *Id.* Given that Plaintiff was traveling with a driver's license from New Jersey on I-40 — which Defendant asserts is "a known drug and human trafficking corridor"[3] — with a female who appeared to be considerably younger with no familial connection, Defendant argues he developed a suspicion of criminal activity. *Id.*

Defendant then asked the female passenger the same general questions. *Id.* at 11. Defendant asserts Ms. Lee could not provide details and "appeared nervous, timid, and scared." *Id.* Defendant then asked Plaintiff and Ms. Lee to stand away from the vehicle as he walked his canine partner Kobra around the vehicle. *Id.* After Kobra gave Defendant a passive alert, Defendant searched the vehicle.[4] *Id.* However, Defendant did not find any narcotics. *Id.* Defendant then let Plaintiff and Ms. Lee leave with a warning relating to Plaintiff's speeding and obscured license plate or registration insignia. *Id.*

Plaintiff filed suit on March 2, 2022, naming Officer Teichelman and the 100th Judicial District as Defendants. ECF No. 1. Plaintiff alleges Defendant's search was an "unconstitutional detention in violation of [Plaintiff's] rights pursuant to the 100th Judicial District's practice of prolonging traffic stops past when the purpose for the stop had concluded in order to illegally detain and search citizens and subject them to civil forfeiture proceedings." ECF No. 1 at 3. The 100th Judicial District filed a motion to dismiss for failure to state a claim. *See* ECF No. 10.

---

[2] Plaintiff contends he "answered he was traveling to Scottsdale, Arizona to help Ms. Lee move her belongings to New Jersey." ECF No. 30 at 11. But Plaintiff does not deny that he "was unable to provide the duration of his travel plans, provide a general itinerary, or general hotel/lodging information." ECF No. 27 at 10.

[3] Plaintiff denies that I-40 is known as such. ECF No. 30 at 11. *But see United States v. Lopez*, No. 2:21-CR-51-Z-(2), 2021 WL 5746006, at *4 (N.D. Tex. Dec. 2, 2021) (I-40 is "known by law enforcement as a notorious corridor for narcotics trafficking").

[4] Plaintiff contends Kobra "neither sat, barked, or stopped to indicate there was a positive alert for drugs." *Id.* at 12.

2

The Court granted the motion, finding Plaintiff failed to plausibly plead the existence of an official policy under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). *See* ECF No. 21. Defendant then filed the instant Motion on September 28, 2022. Plaintiff argues there are genuine disputes of material fact concerning: (1) whether Defendant had probable cause or reasonable suspicion to support detaining Plaintiff after the purposes of the traffic stop had concluded; and (2) whether an illegal search of Plaintiff's vehicle was conducted. ECF No. 29 at 1.

**LEGAL STANDARD**

Summary judgment is proper if the movant shows that there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citing FED. R. CIV. P. 56(a)). A fact is "material" if resolving it one way or another would change the outcome of the lawsuit. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). A genuine dispute over that fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357–58 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). Courts must view the evidence in the light most favorable to the non-movant and resolve factual controversies in the nonmovant's favor. *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

**ANALYSIS**

Qualified immunity protects government officials acting within their authority from individual liability "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 412 (5th Cir. 2011) (en banc). Once a government official establishes that his conduct was within the scope of his discretionary authority, it is up to the plaintiff to show: (1) the official "violated a statutory or constitutional right"; and (2) the right was "clearly

established at the time." *Bevill v. Fletcher*, 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019)). Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 226 (2009). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). And "to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law." *Edwards v. Oliver*, 31 F.4th 925, 929 (5th Cir. 2022) (internal marks omitted).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal marks omitted). Although there is no requirement that a case be "directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal marks omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal marks omitted); *see also Stanton v. Sims*, 571 U.S. 3, 6 (2013) (government officials are given "breathing room to make reasonable but mistaken judgments" (internal marks omitted)). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (internal marks omitted).

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (internal marks omitted). "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's

circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (internal marks omitted). Thus, denial of an official's motion for summary judgment predicated upon qualified immunity requires two distinct determinations: (1) "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law"; and (2) "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Hogan v. Cunningham*, 722 F.3d 725, 730 (5th Cir. 2022) (internal marks omitted).

### A. Defendant Acted Within the Scope of His Discretionary Duties

To trigger the qualified-immunity framework, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). Courts look to state law in determining whether an official was acting within the scope of his duties. *Id.* (internal marks omitted). In *Sweetin* — for example — the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit officer the authority to conduct stops of any kind." *Id.* (internal marks omitted).

Here, it is undisputed that Defendant was acting within the scope of his discretionary duties. Defendant is an officer employed with the 100th Judicial Traffic Enforcement Division. Therefore, the traffic stop was within the scope of Defendant's discretionary duties.

### B. The Initial Traffic Stop Was Justified at Its Inception

The Fourth Amendment prohibits "unreasonable searches and seizures." Traffic stops are considered seizures within the meaning of the Fourth Amendment. *United States v. Valadez*, 267

F.3d 395, 397 (5th Cir. 2001). In determining the legality of a traffic stop, courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968)).

The Court first notes while Plaintiff denies that he was speeding or displaying an obscured license plate, he does not appear to be challenging the lawfulness of the initial traffic stop. But even assuming Plaintiff is correct, Defendant was entitled to make a "reasonable but mistaken judgment[]" so long as his determination that Plaintiff was speeding was not "plainly incompetent." *See Flora v. Sw. Iowa Narcotics Enf't Task Force*, 292 F. Supp. 3d 875, 889 (S.D. Iowa 2018) (quoting *Stanton*, 571 U.S. at 6); *see also Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (reasonable suspicion, as required for a traffic stop, can rest on a reasonable mistake of law). And a motion for summary judgment "cannot be defeated solely by conclusional allegations that a witness lacks credibility." *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009). In *Deville*, the Fifth Circuit held there were genuine issues as to the material facts of whether the plaintiff was detected to have been speeding. *Id.* at 166. But this was only because the plaintiff established the officer had "a history of problematic arrests" and was asked to resign because he filed a false charge of possession of marijuana against an individual who in fact did not have marijuana. *Id.* at 165–66. Thus, the plaintiffs "provided evidence that would allow the jury to disbelieve" the officer's testimony. *Id.* at 165.

But the "egregious history of the officer in *Deville* is clearly distinguishable" from the circumstances of the present case. *Lockett v. New Orleans City*, 639 F. Supp. 2d 710, 735–36 (E.D. La. 2009), *aff'd*, No. 09-30712, 2010 WL 1811772 (5th Cir. May 5, 2010); *see also Retzlaff v. City*

*of Cumberland*, No. 09-CV-692-SLC, 2010 WL 1780338, at *6 (W.D. Wis. May 3, 2010) (distinguishing from *Deville* on similar grounds). Here, Plaintiff alleges myriad instances involving Defendant where a K-9 Unit was supposedly called to the scene after "the purposes for the stop had concluded." *See* ECF No. 1 at 19–26. However, these conclusory allegations are not sufficient to establish Defendant has "any history of improper arrests." *Lockett*, 638 F. Supp. 2d at 736; *see also* ECF No. 21 (holding Plaintiff's conclusory allegations of prolonged stops failed to plausibly plead the existence of an official policy under *Monell*). Therefore, the Court holds Defendant's action was justified at its inception.

### C. Defendant Developed Reasonable Suspicion of Additional Criminal Activity

Because the initial stop was justified, the next step is to determine whether Defendant's subsequent actions were reasonably related in scope to the circumstances that justified the stop. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). But "[i]f the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." *United States v. Andres*, 703 F.3d 828, 833 (5th Cir. 2013); *see also Brigham*, 382 F.3d at 511 ("There is, however, no constitutional stopwatch on traffic stops."). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002). "The reasonable suspicion inquiry falls considerably short of 51% accuracy . . . to be reasonable is not to be perfect." *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (internal marks omitted).

Courts must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (internal marks omitted).

Plaintiff fails to allege a clearly established constitutional violation or that Defendant's actions were objectively unreasonable. Plaintiff insists the purpose of the traffic stop concluded after Defendant gave him a warning and returned his driver's license. ECF No. 1 at 6–7. But considering the totality of the circumstances, the Court cannot agree that no reasonable suspicion of additional criminal activity had developed. Defendant was aware of the following facts:

- Plaintiff was speeding and displaying an obscured license plate;
- Plaintiff was traveling on I-40, which is routinely used for narcotic and human trafficking;
- There appeared to be a large age gap between Plaintiff and a female passenger with no familial connection; and
- Plaintiff's responses were short and incomplete, and he was unable to provide information about his general travel itinerary, hotel accommodations, or length of stay.[5]

ECF No. 27 at 17–18.

Under these circumstances, the Court cannot conclude it is "clearly established" that Defendant was prohibited from asking Ms. Lee the same general questions he had asked Plaintiff after he gave Plaintiff the warning. Plaintiff chiefly relies on *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (en banc). There, the court held that continued detention after determining the driver was not intoxicated "based upon the officer's conclusion that the appellant did not appear to be someone who was on a business trip" was unjustified. *Davis*, 947 S.W.2d at 245. This case

---

[5] Plaintiff is correct to note some of these factors — when considered individually — are not suspicious in and of themselves. *See* ECF No. 30 at 21. But the Court must look at the totality of the circumstances. And Plaintiff agrees that "a court may not consider the relevant factors in isolation from each other." *Id.* at 16 (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2022)).

is distinguishable because of the facts mentioned above. For that reason, *Davis* would not have given Defendant "fair notice" that his conduct might be unconstitutional. *See Nerio v. Evans*, 974 F.3d 571, 575 (5th Cir. 2020). Plaintiff's reliance on *McQuarters v. State*, 58 S.W.3d 250 (Tex. App.—Fort Worth 2001, pet. ref'd) and *Sieffert v. State*, 290 S.W.3d 478 (Tex. App.—Amarillo 2009, no pet.) fails for similar reasons. Thus, Plaintiff fails to allege Defendant violated a constitutional right. But even if Plaintiff's cited authority governs the facts of this case, the Court finds these cases are "insufficient to create a robust consensus." *Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."). And even if Plaintiff's cited cases clearly establish a constitutional violation, the Court finds Defendant's questioning of Ms. Lee was not objectively unreasonable. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's prolonged detention claim.

### D. Defendant Did Not Violate Clearly Established Law By Searching Plaintiff's Vehicle

1. *The sniff was not a "search."*

Defendant asserts Ms. Lee "appeared nervous, timid, and scared" during her questioning and "also could not provide details as to the duration of the trip or general hotel/lodging information." ECF No. 27 at 11. "She looked at the floorboard and failed to make any eye contact" with Defendant. *Id.* Defendant then determined an exterior sniff search by Kobra was necessary to dispel his reasonable suspicion of criminal activity. *Id.* Defendant asserts Kobra gave a "passive alert" to the scent of narcotics. *Id.* Defendant then searched the vehicle but discovered no narcotics. *Id.* Plaintiff did not consent to the search. ECF No. 27 at 23.

Free-air sniffs by narcotics-detection dogs are so minimally invasive that they do not constitute a "search" or a "seizure" for Fourth Amendment purposes. *United States v. Place*, 462 U.S. 696, 707 (1983). "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Caballes*, 543 U.S. at 409. The critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff prolongs the stop. *Rodriguez v. United States*, 575 U.S. 348, 357 (2015) (holding prolonging stop by "seven to eight minutes" for dog sniff is only *de minimus* intrusion on Fourth Amendment rights).

Here, Plaintiff does not contend the sniff itself constituted an unreasonable search. But in any case, there are no facts suggesting Kobra's sniff search prolonged the stop outside of the permissible range. Therefore, Kobra's sniff of Plaintiff's vehicle was not a "search" for the purposes of the Fourth Amendment. Plaintiff instead challenges Defendant's assertion that Kobra alerted him to the presence of narcotics. *See* ECF Nos. 1 at 7, 30 at 12. Because there was no alert — Plaintiff argues — Defendant lacked probable cause to search his vehicle and therefore violated his constitutional rights. ECF No. 30 at 22–24.

2. *Defendant had probable cause to search the vehicle.*

A warrantless search of an automobile is valid under the Fourth Amendment when a police officer has probable cause. *Almeida-Sanchez v. United States*, 413 U.S. 266, 269 (1973). A narcotics-detection dog's alert provides probable cause when "all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). But a "full alert" is not required to establish probable cause. *United States v. Clayton*,

10

374 F. App'x 497, 502 (5th Cir. 2010). "[E]ach dog alerts in a different way, and the dog's behavior must be interpreted by his handler." *United States v. Masterson*, 450 F. App'x 348, 349 (5th Cir. 2011). "[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Harris*, 568 U.S. at 247. "Assuming as [Plaintiff] claims, that the dog did not 'alert' does not preclude immunity." *Jones v. Fountain*, 121 F. Supp. 2d 571, 574 (E.D. Tex. 2000).

Plaintiff fails to establish Defendant violated clearly established law. Plaintiff only cites cases at a high level of generality holding that searches are illegal when conducted without consent or probable cause. *See* ECF No. 30 at 22–23. But the Fifth Circuit has held — in a case involving the *same Defendant* on strikingly similar facts — that probable cause existed despite the appellants' assertion that the dog did not sit or bark. *See United States v. Shen*, 749 F. App'x 256 (5th Cir. 2018). In *Shen*, Defendant's canine ("Alis") was a "passive" alert dog trained to alert by "just stand[ing] and . . . maybe kind of even squat[ting], but she would be focused and staring at the area of the narcotics or the odor where she's detecting the narcotics." 749 F. App'x at 259. The Fifth Circuit held several factors supported a finding of probable cause:

- Defendant had been working with Alis for about two years;

- Alis was certified by the National Narcotic Detector Dog Association and the National Police Canine Association;

- Alis's annual certification, with blind testing, established that she reliably detects drugs in a controlled environment; and

- According to Defendant's uncontradicted testimony, every case of a false-positive response by Alis in the field was explained by the presence of recognizable narcotics odors, even if no drugs were ultimately found.

*Shen*, F. App'x at 261.

Here, Defendant asserts he routinely patrols I-40 with Kobra, and that "Kobra is registered and trained to alert to narcotics with a passive response." ECF No. 28 at 4. Unlike in *Shen*, here there are no other alleged instances of any false-positive responses by Kobra. And there is no evidence that Defendant has ever "mistakenly interpreted" Kobra's actions to be an alert. *Clayton*, 374 F. App'x at 502. Here, Plaintiff's Complaint lists multiple instances where Defendant allegedly "illegally prolonged detention — but in all nine cases involving a K-9 Unit, a positive alert uncovered either large sums of illegal drugs or currency. *See* ECF No. 1 at 19–26. Thus, "the record is absolutely devoid of anything that could possibly undermine the credibility of [Defendant] or the reliability of his canine." *Clayton*, 374 F. App'x at 502. Therefore, Defendant had probable cause to search Plaintiff's vehicle.

The Court simply cannot conclude Defendant violated clearly established law for conducting a search where his canine did not sit or bark when the Fifth Circuit has held Defendant did not conduct an illegal search where his canine did not sit or bark. In other words, Plaintiff is "barking up the wrong tree." *Shen*, 749 F. App'x at 262. Accordingly, Defendant is entitled to qualified immunity on Plaintiff's illegal search claim.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion.

**SO ORDERED.**

October 27, 2022

                                                                                       _____
                                                                                       MATTHEW J. KACSMARYK
                                                                                       UNITED STATES DISTRICT JUDGE